# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THERESA CEDEROTH, KATHRYN BROOM, BEVERLY FREEMAN, DENNIS FAZEKAS, and CHRISTOPHER SIMMS, on behalf of themselves and other similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING, LLC, and ENCORE CAPITAL GROUP, INC., formerly MCM CAPITAL GROUP, INC.,<br><br>          Defendants. | Case No. 1:13-cv-00447<br><br>Honorable Elaine E. Bucklo |

**DEFENDANTS ENCORE CAPITAL GROUP, INC., MIDLAND CREDIT MANAGEMENT, INC. AND MIDLAND FUNDING, LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY TRIAL COURT PROCEEDINGS**

In a last ditch attempt to avoid arbitration, Plaintiff Cederoth's Response distorts the words of the Receivables Purchase Agreement (the "RPA") and speculates that the settlement agreement in *Ross v. Bank of America, N.A., et al*, Case No. 05-cv-7116 (S.D.N.Y.) ("Ross Lawsuit"), prohibits arbitration of Plaintiff Cederoth's claims. Plaintiff misses the mark on both assertions: the RPA changes nothing in Plaintiff's Cardmember Agreement, which provides for arbitration at the election of the account holder; and the *Ross* settlement plainly does not apply to Plaintiff's Account. Thus, Defendants' Motion to Compel Arbitration and Stay Trial Court Proceedings ("Motion") should be granted.

I.    **The Federal Arbitration Act Favors Enforcement of Arbitration Agreements, Including Those That Contain Class Action Waivers.**

As recently confirmed once again by the U.S. Supreme Court, federal policy favors the enforcement of private arbitration agreements, including when they include class action waiver clauses, as is present in this case. *See Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 at *4 (U.S. 2013). Further, the Supreme Court has explained that judicial hostility towards arbitration prompted the creation of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), and thus, by Congressional mandate, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract" and "**consistent with that text, courts must rigorously enforce arbitration agreements according to their terms**." 9 U.S.C. § 2; *Am. Ex.*, 133 S. Ct. 2304 at *4 (emphasis added).

In addition to the *American Express* decision, issued by the Supreme Court on June 20, 2013, *supra*, other "[r]ecent opinions of the Supreme Court have given broad effect to arbitration agreements." *Kilgore v. Keybank, Nat. Ass'n*, 2013 WL 1458876 at *2 (9th Cir. Apr. 11, 2013) (citing *Marmet Health Care Ctr., Inc. v. Brown*, ⸺ U.S. ⸺, ⸺ – ⸺, 132 S.Ct. 1201, 1203–04, 182 L.Ed.2d 42 (2012) (per curiam) (upholding arbitration provision despite state law prohibiting pre-dispute agreements to arbitrate personal injury and wrongful death claims); *AT & T Mobility LLC v. Concepcion*, ⸺U.S. ⸺, ⸺, 131 S.Ct. 1740, 1753, 179 L.Ed.2d 742 (2011) (holding that the FAA preempted a California rule that made class action waivers unconscionable). Therefore, as explained by this Court earlier this year, "[t]he [FAA] requires courts to stay or dismiss proceedings and to compel arbitration if an issue in controversy is covered by a valid arbitration agreement." *Johnson v. Orkin, LLC*, 12 C 141, 2013 WL 828506 (N.D. Ill. Mar. 6, 2013) (Castillo, C.J.) (citing 9 U.S.C. §§ 3, 4; *AT & T Mobility*, 131 S.Ct. at 1748; *E.E.O.C. v. Waffle House, Inc*., 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002);

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). In that regard, "[t]he basic role for courts under the FAA is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Kilgore*, 2013 WL 1458876 at *2 (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Put another way, under the FAA, once it is shown that the agreement to arbitrate is not in issue, the Court must order the parties to proceed to arbitration. *Sarver v. Trans Union, LLC*, 264 F. Supp. 2d 691, 692 (N.D. Ill. 2003) (Bucklo, J.) (citing 9 U.S.C. § 4).

Where a party opposing arbitration fails to raise a triable issue of fact regarding the arbitration agreement, and merely denies facts without evidentiary support, a motion to compel arbitration should be granted. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). In *Tinder*, the Seventh Circuit affirmed the District Court's order granting the defendant's motion to compel arbitration where the defendant provided two affidavits stating that the arbitration agreement had been provided to all employees and the plaintiff provided only her own affidavit claiming that she did not remember seeing the arbitration agreement. *Id.* at 731-32. The *Tinder* Court held that plaintiff's affidavit did not raise triable issue of fact regarding the arbitration agreement and granted the motion to compel arbitration. *Id.* at 735-36.

Here, Plaintiff fails to present any evidence that creates a triable issue of fact regarding the arbitration and class action waiver provisions in her Cardmember Agreement and, accordingly, the Motion should be granted and this matter sent to arbitration.

**II. Plaintiff Fails to Establish Any Fact That Shows She Is Not Bound to Arbitrate Her Dispute Brought Against Defendants In This Case.**

Plaintiff attempts to avoid arbitration by twisting the meaning of language in the RPA, by which Defendant purchased Plaintiff's Account, to suggest that arbitration is not required. Response p. 5. Plaintiff claims that ████████████████████████ states that ██ ████████████████████████████████████████████████. Response pp. 4-6. This argument fails for three reasons: (1) the Cardmember Agreement includes a valid arbitration clause, enforceable at the election of the account holder; (2) Plaintiff is neither party nor third-party beneficiary to the RPA; and (3) ███████████changed nothing by correctly noting that t████████████████████████████████.

Plaintiff Cederoth's Cardmember Agreement contains a valid, elective arbitration clause, that states in relevant part:

> This arbitration provision shall apply to any Claim (defined below) by or against us, or you or any other Covered Person (defined below). You agree any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present, or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to (a) this Agreement, your Account, any transaction or activity involving any payment or failure to make payment on your Account, or any solicitation, advertisement, promotion, or oral or written statements related to this Agreement or your Account, (b) the relationships which result from this Agreement and your relationship with any Covered Person pursuant to the criteria in the immediately preceding subsection or (c) the scope, validity or enforceability of this arbitration clause, any part thereof or the entire Agreement (any of the foregoing a "Claim"), shall be resolved, upon the election of you, us, or any other Covered Person described below, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed.

Motion Exh. A-4 p. 11. Plaintiff has offered no evidence to suggest that this arbitration clause is invalid or does not apply to her claims. *Johnson*, 2013 WL 828506 (N.D. Ill. 2013); *AT & T Mobility*, 131 S.Ct. at 1748; *Kilgore*, 2013 WL 1458876 at *2.

Moreover, nothing in the RPA shows that Plaintiff Cederoth is a party to the RPA ███ ███████ or a third-party beneficiary. "A third-party beneficiary is someone whom the contracting parties wanted to have the right to enforce the contract." *Thomas v. UBS AG*, 706 F.3d 846, 852 (7th Cir. 2013). Under Nevada law, which is the law of choice under the RPA, "Whether an individual is an intended third-party beneficiary, however, depends on the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." *Canfora v. Coast Hotels & Casinos, Inc.*, 121 Nev. 771, 779, 121 P.3d 599, 605 (2005); Motion Exh. A-4 at 14. Nothing in the RPA ███████████ shows any intent by the signing parties to make Plaintiff Cederoth, or any other cardmember, a third-party beneficiary.

Even so, nothing in the RPA ████████changes the arbitration provision in Plaintiff Cederoth's Cardmember Agreement. ████████████████████ ████████████████████████████████ The Cardmember Agreement provides for elective arbitration (Motion Ex. A-4, p. 11 (**"You agree any claim, dispute, or controversy… shall be resolved, upon the election of you, us, or any other Covered Person described below, by binding arbitration pursuant to this arbitration provision...") (emphasis added)**, which is ███████████████ ████████ ████████████████ ████████████████████████ The Cardmember Agreement specifically provides that HSBC may assign the Cardmember Agreement and Account, and that doing so does not change anything: "If we assign your Account, the assignee shall have the same rights as we do under this Agreement." Motion Exh. A-4, p. 13.

Because Defendants have elected to arbitrate Plaintiff Cederoth's claims, she must arbitrate them provided that the arbitration agreement is valid and encompasses the dispute. 9 U.S.C. § 4; *Sarver*, 264 F. Supp. 2d at 692; *Kilgore*, 2013 WL 1458876 at *2. Plaintiff does not contest the validity or applicability of the arbitration provision itself. Plaintiff's catchall assertion, claiming that "whatever the reason" her Account is not subject to arbitration, is insufficient to avoid arbitration as it is unsupported by evidence or any actual reason. Response p. 6; *Tinder* at 735-36. Accordingly, the Motion should be granted.

### III.    The *Ross* Lawsuit Settlement Agreement Does Not Apply To Plaintiff's Account.

Contrary to Plaintiff's speculation, the *Ross* Lawsuit Settlement Agreement does not apply to her account. The *Ross* Settlement Agreement is dated February 24, 2010; it was given preliminary approval by the *Ross* Court on March 18, 2010; and final judgment was entered on July 26, 2010. A copy of the *Ross* Settlement Agreement (with exhibits) is attached here as **Exhibit 1,** and it is publicly available at http://www.arbitration.ccfsettlement.com/documents/, which is part of the larger class administration website at http://arbitration.ccfsettlement.com/. *See also* Docket Entry 216 for the *Ross* Lawsuit (showing the Court's preliminary approval of the *Ross* Settlement Agreement on March 18, 2010), *and* Docket Entry 251 for the *Ross* Lawsuit (showing the Court's final approval of the *Ross* Settlement Agreement on July 26, 2010).[1]

The terms of the *Ross* Settlement Agreement show that it does not apply to Plaintiff's Account; it plainly states that HSBC will remove arbitration clauses and class action waiver

---

[1] "A court is permitted to take judicial notice of public record, such as court documents..." *Johnson v. Merrill Lynch, Pierce, Fenner & Smith Inc*., 2012 WL 5989345 at *1 (N.D.Ill. 2012) (citing *Papasan v. Allain*, 478 U.S. 265, 268 n. 1, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).).

clauses from cardholder agreements "for accounts that have not been closed" and would not insert such clauses into agreements for the following three-and-half years, starting on March 31, 2010. *See* Exhibit 1, p. 11, ¶ 3(a)-(b). Defendant Midland Funding purchased Plaintiff Cederoth's account on April 27, 2009, ten months before the *Ross* Settlement Agreement was even presented to the *Ross* Court for approval. Thus, it could not apply to Plaintiff's Account. *See* Motion to Compel Arbitration, Exh. A, ¶ 5. Nothing in the *Ross* Settlement Agreement or the *Ross* Court's approval of it even suggests that it applies to Plaintiff's account, or that the *Ross* Settlement Agreement is retroactive to apply accounts sold before it was drafted and approved. Plaintiffs' speculation to the contrary is insufficient to establish a genuine issue of material fact. *Tinder* at 735-36.

For the foregoing reasons, as well as those set forth in its Motion and Memorandum in Support, Defendants Midland Credit Management, Inc., Midland Funding, LLC, and Encore Capital Group, Inc. respectfully request an order from this Court staying all proceedings in this case; compelling Plaintiff to submit her claims to arbitration on an individual, non-class basis; and awarding Defendants all such other relief to which the Court deems just.

Respectfully submitted,

Dated:  July 11, 2013     **DYKEMA GOSSETT, PLLC**

        By: /s/ Amy R. Jonker
          Theodore W. Seitz (tseitz@dykema.com)
          Todd Gale (tgale@dykema.com)
          Amy R. Jonker (ajonker@dykema.com)
          DYKEMA GOSSETT PLLC
          ATTORNEYS FOR DEFENDANTS ENCORE CAPITAL
          GROUP, INC.,  MIDLAND CREDIT MANAGEMENT,
          INC. AND MIDLAND FUNDING, LLC
          10 South Wacker Drive, Suite 2300
          Chicago, Illinois  60606
          Phone: 312-876-1700
          Fax: 312-627-2302

GR01\190353.4
ID\ARJ - 097356\0175

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ———————————————————— x | |
| IN RE | MDL No. 1409 |
| CURRENCY CONVERSION FEE | M 21-95 |
| ANTITRUST LITIGATION | |
| ———————————————————— x | |
| THIS DOCUMENT RELATES TO: | Index No. 05 CV 7116 (WHP) |
| ROBERT ROSS, et al., | |
| Plaintiffs, | |
| -against- | |
| BANK OF AMERICA, N.A, (USA) et al., | |
| Defendants. | |
| ———————————————————— x | |

# STIPULATION AND AGREEMENT OF SETTLEMENT WITH HSBC FINANCE CORP. AND HSBC BANK NEVADA, N.A.

# TABLE OF CONTENTS

**Page**

1.   Recitals..................................................................................................................... 1

2.   Definitions............................................................................................................... 4

3.   HSBC's Obligations to the Settlement Class Under this Settlement Agreement. ............ 11

4.   Class Certification.................................................................................................. 13

5.   Cooperation Agreement. ........................................................................................ 14

6.   Preliminary Approval of Settlement. ....................................................................... 15

7.   Notice Plan............................................................................................................ 16

8.   Motion for Entry of Final Judgment. ...................................................................... 17

9.   Final Settlement Approval. .................................................................................... 19

10.  Best Efforts to Effectuate This Settlement.............................................................. 20

11.  Effect on Other Statutes, Regulations and Laws. .......................................... 21

12.  Releases and Covenants Not To Sue. ..................................................................... 22

13.  Application of the Settlement to After-Acquired Portfolios or Accounts, and to Transfers or Assignments to a Third Party. .................................................................. 24

14.  Duration of Settlement Agreement. ........................................................................ 25

15.  Attorneys' Fees and Costs. .................................................................................... 26

16.  Preservation of Discovery Materials........................................................................ 27

17.  Confidentiality Protection....................................................................................... 28

18.  Termination or Disapproval.................................................................................... 29

19.  This Settlement Is Not an Admission. .................................................................... 31

20.  Binding Effect....................................................................................................... 32

21.  Integrated Agreement............................................................................................. 33

22.  Headings. .............................................................................................................. 34

23.  No Party Is the Drafter........................................................................................... 35

i

24.    Choice of Law. ............................................................................................................. 36

25.    Authorization to Enter Settlement Agreement. ............................................................ 37

26.    Signature. ..................................................................................................................... 38

27.    Resolution of Disputes; Jurisdiction. ........................................................................... 39

28.    No Disparagement. ....................................................................................................... 40

1.      **Recitals.**

This Stipulation and Agreement of Settlement (including its exhibits, the "Settlement Agreement") is made and entered into on February 24, 2010, and is to be submitted to the Court for its approval as set forth below.  This Settlement Agreement is entered into on behalf of the Representative Plaintiffs and the Settlement Class, by and through Plaintiffs' Co-Lead Counsel; and defendants HSBC Finance Corporation and HSBC Bank Nevada, N.A. (collectively, "HSBC"), by and through their respective authorized signatories (all of the above collectively referred to as the "Parties").

WHEREAS, the Class Action Complaint was filed on August 11, 2005;

WHEREAS, the First Amended Class Action Complaint was filed on June 5, 2009;

WHEREAS, HSBC's Answer to the First Amended Class Action Complaint was filed on July 17, 2009;

WHEREAS, HSBC's First Amended Answer to the First Amended Class Action Complaint was filed on October 23, 2009;

WHEREAS, Plaintiffs contend that they are entitled to injunctive relief for loss or damage, or threatened loss or damage, by a violation of the antitrust laws arising from HSBC's (and the other Defendants') alleged conduct;

WHEREAS, HSBC denies that it, its predecessors, or any entity affiliated with it engaged in any unlawful conduct or was party to any alleged unlawful conspiracy or agreement with respect to the allegations in the First Amended Class Action Complaint;

WHEREAS, arm's length settlement negotiations have taken place between the Representative Plaintiffs, by Plaintiffs' Co-Lead Counsel, and HSBC;

WHEREAS, after investigation of the facts and after carefully considering applicable law, the Representative Plaintiffs and Plaintiffs' Co-Lead Counsel have concluded that it would be in the best interests of the Settlement Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation, particularly complex litigation such as this, and to assure benefits to the Settlement Class; and that the terms and conditions of this Settlement Agreement, and the settlement contemplated hereby, are fair, reasonable, and adequate and in the best interests of all members of the Settlement Class;

WHEREAS, HSBC, despite its good faith belief that it is not liable regarding any of the Claims in the First Amended Class Action Complaint and has valid defenses, enters into this Settlement Agreement to avoid the further risk, expense, inconvenience and burden of this Litigation, and the distraction and diversion of its personnel and resources, and to obtain the conclusive and complete dismissal of the First Amended Class Action Complaint as to HSBC; and

WHEREAS, the Parties agreed to a Memorandum of Settlement, dated December 30, 2009;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the undersigned, on behalf of the Representative Plaintiffs, the Settlement Class, and HSBC, that the First Amended Class Action Complaint shall be dismissed on the merits and with prejudice as to HSBC, upon entry of "Final Judgment and Order of Dismissal with Respect to Defendants Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., JPMorgan Chase & Co., Chase Bank USA, N.A., Capital One Bank (USA), N.A., Capital One Bank, N.A., HSBC Finance Corporation, and HSBC Bank Nevada, N.A.", and the First Amended Class Action Complaint in its entirety shall be finally and fully compromised and

2

settled as to HSBC, subject to the approval of the Court as required by Rule 23 of the Federal

Rules of Civil Procedure, on the following terms and conditions:

3

2.      **Definitions.**

For purposes of this Settlement Agreement only, the words and terms used in this Settlement Agreement that are expressly defined in this Section or elsewhere in this Settlement Agreement shall have the meaning ascribed to them in those definitions.

(a)      "HSBC" has the meaning given to it in the initial paragraph of this Settlement Agreement.

(b)      "HSBC-Affiliated Witness" has the meaning given to it in Paragraph 5(c) of this Settlement Agreement.

(c)      "American Express" means American Express Company, and its subsidiaries American Express Travel Related Services, Inc., American Express Centurion Bank and American Express Bank, FSB.

(d)      "Arbitration Clause" means the terms and conditions contained in any document purportedly binding cardholders – including but not limited to correspondence, change-in-terms notices, cardholder agreements,[1] initial disclosures, solicitations or billing statements – that, at the election of one party, requires the use of arbitration or other binding, out-of-court procedures to resolve disputes between a Bank Defendant (as well as any other Defendant or third party, American Express or Wells Fargo), on the one side, and a cardholder on the other side. "Arbitration Clause" includes "Class Action Waiver Clause."

(e)      "Bank Defendants" means HSBC; Bank of America, N.A. (USA), now known as FIA Card Services, N.A., and Bank of America, N.A. (collectively, "Bank of America"); Capital One Bank (USA), N.A. and Capital One, N.A. (collectively, "Capital One"); JPMorgan Chase &

---

[1] The use of the term "agreement" throughout this Settlement Agreement is for convenience. Plaintiffs do not agree or concede that there is any "agreement" between issuers and cardholders either as a matter of fact or law.

Co. and Chase Bank USA, N.A. (collectively, "Chase"); Citigroup, Inc., Citibank (South Dakota) N.A., Citibank USA, N.A., Universal Bank, N.A., Universal Financial Corp., and Citicorp Diners Club, Inc. ("Diners Club") (collectively, "Citibank"); and DFS Services LLC, Discover Financial Services, and Discover Bank (collectively, "Discover").

(f)     "CAFA" means the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), effective February 18, 2005, codified at 28 U.S.C. §§ 1711-1715.

(g)     "Cardholder" means any Person (defined below) who holds a Credit Card issued by a Bank Defendant.

(h)     "Carved Out Claims" are Claims for monetary relief arising from any alleged damage or injury allegedly experienced by a member of the Settlement Class as a result of HSBC's invocation or enforcement of an Arbitration Clause or Class Action Waiver Clause in a United States Cardholder Agreement against that Settlement Class member.  Carved Out Claims include but are not limited to any and all claims relating to (i) the use of NAF arbitration proceedings to seek the collection of actual or alleged cardholder debts, and (ii) any act or omission undertaken in anticipation of, in connection with, incident to, referencing the fact or possibility of, or to enforce the results of such NAF proceedings.  Notwithstanding the foregoing, Carved Out Claims do not include (x) the claims of individuals who did not experience the invocation or enforcement of an Arbitration Clause or Class Action Waiver Clause in a United States Cardholder Agreement as a named party in litigation or arbitration (*e.g.*, a claim that an individual experienced the enforcement of an Arbitration Clause solely as an absent class member is not a Carved Out Claim), and (y) claims of the Representative Plaintiffs.

(i)     "Claims," for the purposes of defining "Carved Out Claims" (¶ 2(h) above) and "Released Claims" (¶ 2(aa) below), means any and all claims, actions, causes of action,

5

liabilities, damages (whether actual, nominal, punitive, exemplary, or otherwise), injunctive relief, costs, fees, attorneys' fees, or penalties of any kind.

(j) "Class Action Waiver Clause" means any terms or conditions, in any document purportedly binding cardholders – including but not limited to correspondence, change-in-terms notices, cardholder agreements, initial disclosures, solicitations or billing statements – purporting to prohibit and/or restrict cardholder's participation (whether as a representative or absent participant) in any form of collective action, including but not limited to class actions, class arbitration, private attorney general actions or any other representative proceeding.

(k) "Consumer/Small Business Credit Card" means any Credit Card issued pursuant to a United States Cardholder Agreement and subject to a natural person's and not a business' credit worthiness, or other similar document, that is not subject to individualized negotiation. Consumer/Small Business Credit Cards do not include corporate, purchasing or other business Credit Cards in which the business or corporation that sponsors the card agreement had an opportunity to negotiate the terms of its agreement with HSBC. For purposes of this Settlement Agreement only, Consumer/Small Business Credit Cards do not include corporate or commercial business credit cards issued by HSBC.

(l) "Court" means the United States District Court for the Southern District of New York, the Honorable William H. Pauley III, presiding.

(m) "Credit Card" means a general purpose payment card that extends to Cardholders a revolving line of credit or that require payment of an amount due by a due date. For avoidance of doubt, solely for purposes of use herein, Credit Card includes, without limitation, cards commonly known as credit cards and charge cards, but does not include debit cards, ATM cards, stored value cards, gift cards, or non-general purpose store cards.

(n)    "Defendants" means the Bank Defendants (including HSBC) and defendant

National Arbitration Forum ("NAF").

(o)    "Effective Date" means the date on which the Court enters the proposed

preliminary approval order (or materially identical order), as addressed in Section 6 and attached

hereto at Exhibit 1.

(p)    "Final Judgment and Order of Dismissal with Respect to Defendants Bank of

America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., JPMorgan Chase

& Co., Chase Bank USA, N.A., Capital One Bank (USA), N.A., Capital One Bank, N.A., HSBC

Finance Corporation, and HSBC Bank Nevada, N.A." (or "Final Judgment and Order of

Dismissal") means the entry by the Court of an order and final judgment in all material respects

in the form attached as Exhibit 2 to this Settlement Agreement.

(q)    "Final Settlement Approval" shall have the meaning set forth in Section 9 hereof.

(r)    "First Amended Class Action Complaint" means the First Amended Class Action

Complaint, which was filed in the Litigation on June 5, 2009.

(s)    "Forbearance Period" means the period specified in Paragraph 3(b).

(t)    "Litigation" means *Ross, et al. v. Bank of America, N.A. (USA) et al.*, No. 05-CV-

7116 (S.D.N.Y.) (WHP), including, without limitation, any appeals or requests for leave to

appeal therefrom, and any matters asserted in the First Amended Class Action Complaint,

pleadings, filings, interrogatory responses, or other papers filed or served in the Litigation.

(u)    "Mailings" means the issuance of new agreements or change-in-terms notices, or

other form of notice, to HSBC's Consumer/Small Business Credit Card Cardholders.

(v)    "MOS Date" means December 30, 2009, the date on which the Memorandum of

Settlement was executed.

7

(w)     "Period in Suit" means the period from the first Bank Defendant's adoption of an Arbitration Clause for its Consumer/Small Business Credit Cards through the date of execution of this Settlement Agreement.

(x)     "Persons" includes, without limitation, natural persons, firms, banks, corporations, businesses, limited liability companies, partnerships, savings and loan institutions, credit unions, depository institutions, federal, state and other governments and their political subdivisions, agencies and instrumentalities, and all other entities.

(y)     "Plaintiffs' Co-Lead Counsel" means Berger & Montague, P.C, Coughlin Stoia Geller Rudman & Robbins LLP, Hulett Harper Stewart LLP and Scott + Scott LLP.

(z)     "Pro Rata Settling Defendant Basis" means the calculation of a fraction equal to the subject Defendant's maximum payment for notice costs divided by the sum of all Settling Defendants' maximum payments for notice costs.  For purposes of this definition, "Settling Defendants" means those Defendants that have entered into a Memorandum of Settlement or a Stipulation and Agreement of Settlement (*i.e.*, a final settlement agreement) as of the time of the calculation described in Paragraph 7(c).

(aa)     "Released Claims" means any and all actual or potential Claims (i) which arise in whole or in part out of the adoption or inclusion of an Arbitration Clause or Class Action Waiver Clause in a United States Cardholder Agreement, or (ii) which are, have been, or could have been asserted within the scope of the facts asserted in the Litigation.  Notwithstanding the foregoing, "Released Claims" do not include claims arising from acts or omissions occurring on or after (x) the date on which class notice is published, or (y) the date on which HSBC's United States Cardholder Agreements are amended pursuant to Paragraph 3(a) of this Settlement

8

Agreement, whichever occurs first. Notwithstanding the foregoing, Released Claims do not include the Carved Out Claims.

(bb)  "Released Parties" means HSBC Finance Corporation and HSBC Bank Nevada, N.A., together with their predecessors, successors (including, without limitation, acquirers of all or substantially all of their assets, stock or other ownership interests) and assigns; the past, present and future, direct and indirect, parents (including, but not limited to, holding companies), subsidiaries and affiliates of any of the above; and the past, present and future principals, trustees, partners (including, without limitation, affinity, agent bank, and co-brand contractual parties), officers, directors, employees, agents, attorneys, shareholders, advisors, predecessors, successors (including, without limitation, acquirers of all or substantially all of their assets, stock or other ownership interests), assigns, representatives, heirs, executors, and administrators of any of the above.

(cc)  "Representative Plaintiffs" or "Plaintiffs" means the named plaintiffs in the First Amended Class Action Complaint:  S. Byron Balbach, Jr., Woodrow W. Clark, Matthew Grabell, Paul Impellezzeri, Andrea Kune, Richard Mandell, Robert Ross, and Herve Senequier.

(dd)  "Settlement Class" means the Class and Subclass, as those terms are defined in Section 4.

(ee)  "Signature Date" means February 24, 2010.

(ff)  "United States Cardholder Agreement" means the terms applicable between an issuer and the holder of a Consumer/Small Business Credit Card when (i) the issuing bank is based in the United States, and (ii) the terms are under United States law or the laws of one of the states of the United States, and (iii) the Credit Card is issued in the United States.

9

(gg)    "Wells Fargo" means Wells Fargo & Company and its wholly owned subsidiary Wells Fargo Bank, N.A.

10

3.      **HSBC's Obligations to the Settlement Class Under this Settlement Agreement.**

(a)      HSBC will remove any and all Arbitration Clauses and the Class Action Waiver Clauses from its United States Cardholder Agreements for accounts that have not been closed by mailing new agreements, change-in-terms notices or other form of notice to all of its Consumer/Small Business Credit Card cardholders who have accounts that have not been closed and who have Arbitration Clauses or Class Action Waiver Clauses in their United States Cardholder Agreements. Such Mailings will be substantially completed within sixty (60) days following March 31, 2010.

(b)      HSBC will not restore or otherwise insert into its United States Cardholder Agreements either an Arbitration Clause or a Class Action Waiver Clause within three and one half (3.5) years following March 31, 2010; provided, however, that if HSBC fails to substantially complete the required Mailings within 60 days of March 31, 2010, the Settlement Agreement will remain effective, but the commencement of the Forbearance Period shall be extended by the same amount of time by which HSBC is late in substantially completing the Mailings.

(c)      Effective on the MOS Date, HSBC will not seek to enforce an Arbitration Clause or Class Action Waiver Clause against a member of the Settlement Class based on currently existing or pre-existing United States Cardholder Agreements, except that HSBC may seek to enforce Arbitration Clauses or Class Action Waiver Clauses:

(i)      as provided in Paragraph 12(d) below; and

(ii)      as against a member of the Settlement Class who, after being offered the choice in writing by HSBC, opts in writing for an existing Consumer/Small Business

11

Credit Card-related arbitration to continue in arbitration rather than being refiled in court.[2]

For the avoidance of doubt, to the extent that HSBC has, prior to the MOS Date, obtained any arbitration awards, judgments, or court rulings based in whole or in part on an Arbitration Clause or Class Action Waiver Clause in a United States Cardholder Agreement in any matter, HSBC is not precluded from seeking to enforce or uphold such awards, judgments or court rulings.

(d)     HSBC will not contract, combine, or conspire with any other credit card issuer regarding the re-imposition or re-adoption of an Arbitration Clause or Class Action Waiver Clause.  Nothing herein will be construed or deemed to be an admission or evidence of any violation of any statute, law or legal principle, or of any liability or wrongdoing, by HSBC, anyone acting on HSBC's behalf, or any of the Released Parties.

(e)     The Court shall maintain continuing jurisdiction to address any alleged violation of this Section 3 of this Settlement Agreement, and also to enforce this Section 3, as provided by Section 27.

---

[2]  Where a member of the Settlement Class has (a) initiated a claim or a counter-claim in arbitration, (b) is offered the choice of proceeding in court, and (c) elects to proceed in court, HSBC agrees not to assert any limitations period (or similar) defense, except as it would have been available at the time the arbitration claim or counter-claim was made.

4.    **Class Certification.**

Pursuant to the Court's Order dated October 6, 2009, the Class and Subclass are defined as follows:

(a)    A class consisting of all persons holding during the period in suit a Credit Card under a United States Cardholder Agreement with any of the Bank Defendants (including, among other cards, cards originally issued under the MBNA, Bank One, First USA and Providian brands), but not including members of the proposed Subclass, subject to an Arbitration Clause relating to their cards (the "Class"); and

(b)    A subclass consisting of all persons holding during the period in suit a Credit Card under a United States Cardholder Agreement with Discover, which cardholders have not previously successfully exercised their right to opt out of Discover's Arbitration Clause (also referred to as the "Arbitration of Disputes Provision") (the "Subclass").[3]

---

[3] Reference to Discover's "opt out" provision is not intended to reflect a finding that Discover's opt out provision was either meaningful or effective, whether as a matter of fact or as a legal issue. As such, it is not intended to preclude any Party from arguing any position on this issue or to pre-judge the issue.

13

5.        **Cooperation Agreement.**

(a)        HSBC and Plaintiffs will cooperate with each other in good faith regarding (i) discovery requests from Plaintiffs relating to the Litigation and (ii) limiting the burden that such discovery requests impose on HSBC.

(b)        Such cooperation shall extend to cooperation regarding the resolution of privilege disputes regarding HSBC's documents, but shall not require HSBC to waive valid claims of privilege or work product.  The Parties shall resolve in good faith any concerns regarding assertions of privilege.

(c)        With respect to making witnesses available for deposition or trial in connection with the Litigation, HSBC will make available, to the best of its ability, up to eight (8) witnesses currently or formerly employed by HSBC or an HSBC predecessor institution (an "HSBC-Affiliated Witness").  An HSBC-Affiliated Witness who appears for deposition will not also be required to appear at trial unless Plaintiffs are unable to enter into evidence the relevant portions of the deposition transcript relating to that witness.  Plaintiffs will not seek the deposition or appearance at trial of more than the eight (8) HSBC-Affiliated Witnesses contemplated in this paragraph.  Each such HSBC-Affiliated Witness shall be made available at HSBC's expense and any interview or deposition shall be conducted at a location agreed to by the Parties.

(d)        Unless this Settlement Agreement is rescinded, disapproved, or otherwise fails to take effect, HSBC's obligations to cooperate under this Settlement Agreement shall continue until the date that final judgment has been rendered in the Litigation against all Defendants, and shall terminate at that time.

ny-911867

6. <u>**Preliminary Approval of Settlement.**</u>

At a time to be set by the Court, Plaintiffs' Co-Lead Counsel shall submit to the Court a motion for Preliminary Approval of this Settlement Agreement, and the settlement contemplated hereby, including the disbursement of monies designated for notice costs. A copy of a proposed form of order preliminarily approving the settlement ("Order Preliminarily Approving Class Action Settlement as to Defendants Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., JPMorgan Chase & Co., Chase Bank USA, N.A., Capital One Bank (USA), N.A., Capital One Bank, N.A., HSBC Finance Corporation, and HSBC Bank Nevada, N.A.") is attached at Exhibit 1. No later than ten (10) days after the filing of the motion for Preliminary Approval, HSBC shall submit to the Court any additional filings or materials pertaining to the motion for Preliminary Approval, including, but not limited to, any materials demonstrating their compliance with CAFA.

15

7.        **Notice Plan.**

(a)        In connection with the motion described in Section 6 above, Plaintiffs' Co-Lead Counsel shall submit to the Court for its approval under Rule 23 of the Federal Rules of Civil Procedure the plan for notice to the Settlement Class (the "Notice Plan"), a copy of which is attached hereto as Exhibit 3 (which includes, *inter alia*, a Notice (attached as Exhibit 4 hereto)), which in their opinion fully satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.

(b)        The Parties agree that the terms of the Notice Plan and Notice are sufficient to satisfy the requirements of due process and FED. R. CIV. P. 23.

(c)        If, as a condition of approval of this Settlement Agreement, the Court or a reviewing court requires either (i) individual notice of the Settlement Agreement or (ii) publication or such other notice where HSBC's share of the costs, on a Pro Rata Settling Defendant Basis is more than seventy-five thousand dollars ($75,000), then HSBC, Plaintiffs' Co-Lead Counsel and Plaintiffs each will have the option to void this Settlement Agreement *ab initio* within twenty one (21) days of such ruling.  In the event that the Settlement Agreement is not approved or does not become effective following the publication of notice to the Settlement Class, HSBC (i) will not seek to recover the costs of such notice from Plaintiffs or Plaintiffs' Co-Lead Counsel, (ii) will receive its share, on a Pro Rata Settling Defendant Basis, of any funds paid into the Escrow pursuant to Paragraph 15(b) of this Settlement Agreement which were not used to cover notice costs, and (iii) may request a declaration from Plaintiffs' Co-Lead Counsel stating and itemizing the amount spent on notice costs.

16

ny-911867

8.      **Motion for Entry of Final Judgment.**

(a)      Plaintiffs' Co-Lead Counsel shall submit to the Court a motion for entry of an order and final judgment.  A copy of a proposed form of order and final judgment ("Final Judgment and Order of Dismissal with Respect to Defendants Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., JPMorgan Chase & Co., Chase Bank USA, N.A., Capital One Bank (USA), N.A., Capital One Bank, N.A., HSBC Finance Corporation, and HSBC Bank Nevada, N.A."), which Plaintiffs' Co-Lead Counsel, at a time to be set by the Court, shall submit to the Court for its approval in connection with the motion described in this Section, is attached hereto as Exhibit 2. Among other things, it:

(i)      certifies that any applicable requirements of CAFA have been met;

(ii)      grants final approval to this Settlement Agreement and the settlement contemplated hereby as being a fair, reasonable and adequate settlement for all Settlement Class members within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directs its consummation pursuant to its terms and conditions;

(iii)      dismisses the First Amended Class Action Complaint with prejudice, and (except as provided for in this Settlement Agreement) without costs, in favor of HSBC but not as to any non-settling Defendant under FED. R. CIV. P. 54(b); and

(iv)      reserves to the Court exclusive personal and subject matter jurisdiction with respect to the resolution of all matters relating to the implementation or enforcement of this Settlement Agreement and the Final Judgment and Order of Dismissal.

(b)      The Parties agree to recommend and to use their best efforts to obtain entry of the Final Judgment and Order of Dismissal, and to do nothing inconsistent therewith.

(c)      At the time that Plaintiffs' Co-Lead Counsel submits to the Court a motion for entry of an order and final judgment, Plaintiffs' Co-Lead Counsel shall submit to the Court a motion for the approval of the payment of attorneys' fees and litigation expenses, and the

17

ny-911867

disbursement of monies designated for notice costs. A copy of a proposed form of order and judgment (entitled "Judgment Approving Attorneys' Fees and Costs, and the Disbursement of Monies Designated for Notice Costs in Connection with the Settlement as to Defendants Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., JPMorgan Chase & Co., Chase Bank USA, N.A., Capital One Bank (USA), N.A., Capital One Bank, N.A, HSBC Finance Corporation, and HSBC Bank Nevada, N.A."), which Plaintiffs' Co-Lead Counsel, at a time set forth by the Court, shall submit to the Court for its approval in connection with the motion described in this Paragraph, is attached hereto as Exhibit 5.

(d)     The Parties agree that the addition of other settling Defendants (and terms related to those settling Defendants) to (i) the proposed Order Preliminarily Approving Class Action Settlement as to Defendants Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., JPMorgan Chase & Co., Chase Bank USA, N.A., Capital One Bank (USA), N.A., Capital One Bank, N.A., HSBC Finance Corporation, and HSBC Bank Nevada, N.A., (ii) the proposed Final Judgment and Order of Dismissal with Respect to Defendants Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., JPMorgan Chase & Co., Chase Bank USA, N.A., Capital One Bank (USA), N.A., Capital One Bank, N.A., HSBC Finance Corporation, and HSBC Bank Nevada, N.A., or (iii) to the proposed Judgment Approving Attorneys' Fees and Costs, and the Disbursement of Monies Designated for Notice Costs in Connection with the Settlement as to Defendants Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., JPMorgan Chase & Co., Chase Bank USA, N.A., Capital One Bank (USA), N.A., Capital One Bank, N.A., HSBC Finance Corporation, and HSBC Bank Nevada, N.A., attached at Exhibits 1, 2 & 5, does not constitute a material alteration of the revised proposed orders.

18

9.      **Final Settlement Approval.**

(a)     This Settlement Agreement shall become final upon the occurrence of the last of the following events ("Final Settlement Approval"):

(i)      final approval of this Settlement Agreement, and the settlement contemplated hereby, including the approval of the payment of attorneys' fees and costs, and the disbursement of monies designated for notice costs, in all respects by the Court;

(ii)     entry of the Final Judgment and Order of Dismissal with Respect to Defendants Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., JPMorgan Chase & Co., Chase Bank USA, N.A., Capital One Bank (USA), N.A., Capital One Bank, N.A., HSBC Finance Corporation, and HSBC Bank Nevada, N.A. in all material respects in the form of Exhibit 2 hereto; and

(iii)    expiration of the time for further judicial review, or the time to seek permission for further judicial review, of the Court's approval of this Settlement Agreement and the settlement contemplated hereby, and the Court's entry of the Final Judgment and Order of Dismissal, without the filing of a request for further judicial review or an effort to seek permission for further judicial review, or, if such further judicial review or effort to seek permission for such further judicial review is sought, (A) such further judicial review or effort to seek permission for such further judicial review has been dismissed and the time to seek any further judicial review has expired, or (B) approval of this Settlement Agreement and the settlement contemplated hereby, and the Final Judgment and Order of Dismissal, have been affirmed in their entirety by the court of last resort from which further judicial review has been sought and such affirmance has become no longer subject to the possibility of further judicial review.

(b)     The provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining any of the times stated in Paragraph 9(a)(iii) above.

(c)     For avoidance of doubt, no Party shall have any right to terminate this Settlement Agreement after Final Settlement Approval.

10.     **<u>Best Efforts to Effectuate This Settlement.</u>**

        The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to obtain approval of this Settlement Agreement and the settlement contemplated hereby, and shall do nothing inconsistent therewith.

20

11.     **Effect on Other Statutes, Regulations and Laws.**

(a)     With respect to events occurring after the MOS Date, HSBC's agreement to settle this matter does not reduce, eliminate or otherwise curtail any obligation HSBC may have under present or future applicable statutes, regulations or other laws concerning Arbitration Clauses and/or Class Action Waiver Clauses.

(b)     With respect to events occurring after the MOS date, this Settlement Agreement shall not supersede or reduce any protections conferred on cardholders by legislation or regulation with respect to Arbitration Clauses and/or Class Action Waiver Clauses.

21

12. **Releases and Covenants Not To Sue.**

(a)     For avoidance of doubt, this Release does not encompass the claims asserted against American Express in *Ross, et al. v. American Express Co., et al.*, No. 04-CV-05723 (S.D.N.Y.) (WHP).  In addition, in the event that the current settlement of *In re Currency Conversion Fee Antitrust Litig.*, Master File No. M21-95, MDL No. 1409 (S.D.N.Y.) (WHP) ("*Currency Conversion*"), is not finally approved, nothing in this Settlement Agreement will prevent (or entitle) Plaintiffs from offering discovery taken in this Litigation as evidence in *Currency Conversion*.

(b)     All members of the Settlement Class release and forever discharge the Released Parties from the Released Claims.

(c)     Upon Final Settlement Approval, each Representative Plaintiff hereby covenants and agrees that he/she/it shall not take any step whatsoever to commence, institute, continue, pursue, maintain, prosecute or enforce any Released Claim(s), on behalf of itself or any other person, against the Released Parties.  Upon Final Settlement Approval, each Representative Plaintiff hereby warrants and represents that he/she/it has not assigned, sold or otherwise transferred any Claim that he/she/it previously had that otherwise would fall within the scope of a Released Claim and this Section 12.

(d)     HSBC reserves any and all rights, defenses and counterclaims that it or any Released Party may have with respect to any Carved Out Claims asserted against the Released Parties, including, without limitation, the right to seek to compel the arbitration of Carved Out Claims, the right to assert a Class Action Waiver Clause with respect to Carved Out Claims, and the right to contend that Carved Out Claims are barred or precluded by prior arbitration awards, rulings or judgments, including awards, rulings and judgments predicated on an Arbitration

22

Clause or Class Action Waiver Clause. Subject to the limitation stated in Paragraph 13(b), the foregoing reservation of rights includes, without limitation, the right to assert and seek enforcement of Arbitration Clauses, Class Action Waiver Clauses, arbitration awards, judgments, and court rulings with respect to any and all claims relating to (i) the use of NAF arbitration proceedings to seek the collection of actual or alleged cardholder debts, and (ii) any act or omission undertaken in anticipation of, in connection with, incident to, referencing the fact or possibility of, or to enforce the results of such NAF proceedings.

(e)     Except as provided in this Settlement Agreement and subject to FED. R. CIV. P. 60(b), HSBC, its counsel and those acting at their behest fully and finally release Plaintiffs, their counsel and those acting at their behest for all claims that have been or could have been brought relating to the institution, conduct or settlement of the Litigation; and Plaintiffs, their counsel and those acting at their behest fully and finally release HSBC, its counsel and those acting at their behest for all claims that have been or could have been brought relating to the defense or settlement of this Litigation. Plaintiffs and HSBC agree to relinquish and not to assert any claim under Rule 11 of the Federal Rules of Civil Procedure or any similar law, rule or regulation, that the Litigation was brought or defended in bad faith or without a reasonable basis. The Parties to this Settlement Agreement agree that the terms of the Settlement Agreement, including the amount paid by HSBC, were negotiated at arm's-length in good faith by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

23

13.    **Application of the Settlement to After-Acquired Portfolios or Accounts, and to Transfers or Assignments to a Third Party.**

(a)    Any Consumer/Small Business Credit Card portfolios that HSBC acquires after the date of execution of this Settlement Agreement will be conformed to the terms of this Settlement Agreement within a reasonable period of time.

(b)    With respect to any HSBC Consumer/Small Business Credit Card cardholder agreement, account or obligation that HSBC transfers or assigns to a third party after March 31, 2010, HSBC will contract with said third party for said third party to abide by the provisions of Paragraph 3(c) above.

24

14.     **<u>Duration of Settlement Agreement.</u>**

Except for (i) HSBC's obligations under Paragraphs 3(a) & (b) of this Settlement Agreement, the duration of which are addressed in Paragraphs 3(a) & (b), (ii) HSBC's obligations under Paragraph 7(c) and Section 15, which are intended to be permanent, (iii) HSBC's obligations under Section 5, which expire at the conclusion of the Litigation, and (iv) HSBC's obligations under Section 16, the duration of which are addressed in Section 16, HSBC's obligations under this Settlement Agreement will expire five (5) years after the date of execution of this Settlement Agreement.

ny-911867

15.     **Attorneys' Fees and Costs.**

(a)     As set forth in paragraphs (b) and (c) of this Section 15, subject to Court approval and upon Final Settlement Approval, HSBC shall pay to Plaintiffs' Co-Lead Counsel the sum of four hundred thousand dollars ($400,000) in attorneys' fees, costs and expenses.

(b)     Within seven (7) calendar days of Preliminary Approval of the Settlement Agreement, HSBC shall place seventy-five thousand dollars ($75,000) into an escrow account (the "Escrow") from which payments approved by the Court shall be made to Plaintiffs' Co-Lead Counsel to cover the cost of notice (including administration).  All sums expended on notice by HSBC shall be credited against the payment of attorneys' fees, costs, and expenses due to Plaintiffs' Co-Lead Counsel by HSBC.  Within seven (7) calendar days of Preliminary Approval of the Settlement Agreement, the up to seventy-five thousand dollars ($75,000) to be advanced for notice costs shall be immediately accessible to Plaintiffs' Co-Lead Counsel for notice purposes only.  Subject to Court approval and upon Final Settlement Approval, the remaining monies in the Escrow shall be made available to Plaintiffs' Co-Lead Counsel for attorneys' fees, costs and expenses.

(c)     Subject to Court approval and within ten (10) business days of Final Settlement Approval, HSBC shall pay to Plaintiffs' Co-Lead Counsel the sum of three hundred and twenty-five thousand dollars ($325,000) in attorneys' fees, costs and expenses.

(d)     Other than as expressly provided in this Settlement Agreement, Plaintiffs and HSBC (as amongst each other) will bear their own fees, costs and expenses in the Litigation.

16.     **Preservation of Discovery Materials.**

         The Parties shall preserve all discovery materials in this Litigation until the last to

occur of: (a) final resolution of *Ross, et al. v. American Express Co., et al.*, No. 04-CV-05723

(S.D.N.Y.) (WHP); (b) final resolution of *Ross, et al. v. Bank of America, N.A. (USA) et al.*, No.

05-CV-7116 (S.D.N.Y.) (WHP); and (c) final resolution of *In re Currency Conversion Fee*

*Antitrust Litig.*, MDL No. 1409, Master File No. M 21-95 (S.D.N.Y.) (WHP).  Within sixty (60)

days after the later event described in the first sentence of this Section 16, and in accordance with

the provisions of the Protective Order entered by this Court on April 20, 2009 and in force as of

the date of this Settlement Agreement, Plaintiffs' Co-Lead Counsel shall take all steps

appropriate to return or destroy the discovery materials produced in the Litigation by HSBC.

27

**17.**      <u>**Confidentiality Protection.**</u>

        Except as necessary to secure preliminary approval and Final Settlement

Approval of this Settlement Agreement, all communications and information exchanged between

Plaintiffs' Co-Lead Counsel and the parties in the course of settling the Litigation will be treated

as inadmissible, undiscoverable and confidential.  Non-settlement communications and

information provided by HSBC, before or after the date of this Settlement Agreement, including,

without limitation, documents, answers to interrogatories, answers to requests for admission, and

deposition testimony, shall be governed by the Protective Order entered by the Court on April

20, 2009 and in force as of the Effective Date of this Settlement Agreement.

18.     **Termination or Disapproval.**

(a)     Except as provided in Paragraphs 5, 7(c), 10, 15 (as it concerns notice costs), 17, and 19, this Settlement Agreement and all of the commitments and obligations it imposes on the parties are contingent on Final Settlement Approval.

(b)     Until such time as this Settlement Agreement terminates, the parties shall continue their performance of this Settlement Agreement.

(c)     In the event that

(i) the Settlement Agreement terminates,

(ii) the Settlement Agreement is voided under Paragraph 7(c),

(iii) the Court for any reason does not enter any material part of the Final Judgment and Order of Dismissal, or

(iv) the Court enters the Final Judgment and Order of Dismissal and judicial review is sought and, on such review, such Final Judgment and Order of Dismissal is not materially affirmed such that there is no Final Settlement Approval,

then the Settlement Agreement shall become void *ab initio*, shall have no force and effect, shall impose no obligations on the Parties, and the parties shall be free to cease their performance of this Settlement Agreement, *except* that

(x) Paragraphs 7(c), 15 (as it concerns notice costs) and 19 shall remain in effect, and

(y) the Settlement and all settlement discussions between the Parties will remain inadmissible, undiscoverable, and strictly confidential to the maximum extent permitted by law.

In such case, the Parties shall immediately and jointly move the Court to vacate the Final Judgment and Order of Dismissal with Respect to Defendants Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., JPMorgan Chase & Co., Chase Bank USA, N.A., Capital One Bank (USA), N.A., Capital One Bank, N.A., HSBC Finance

29

Corporation, and HSBC Bank Nevada, N.A., to the extent any portion of the order is then in effect, with the object that the operative complaint in this matter shall be the First Amended Class Action Complaint, filed on June 5, 2009.

19.     **This Settlement Is Not an Admission.**

The Parties hereto agree that, whether or not there shall be Final Settlement Approval, this Settlement Agreement (including, without limitation, its exhibits), and any and all negotiations, documents and discussions associated with it, shall be without prejudice to the rights, positions or privileges of any Party (except as expressly provided for in this Settlement Agreement, including, without limitation, its exhibits), and shall not be deemed or construed to be an admission or evidence of HSBC's or any of the Released Parties' violation of any statute, law, or legal principle or of HSBC's or any of the Released Parties' liability or participation in any wrongdoing, or of the truth of any of the allegations in the Litigation.  Evidence of this Settlement Agreement or its negotiation shall not be used, directly or indirectly, in any way, whether in this matter or in any other action or proceeding, except by the Parties for purposes of implementing or enforcing the terms and conditions of this Settlement Agreement and/or the Final Judgment and Order of Dismissal.

31

20.     **<u>Binding Effect.</u>**

(a)     The Parties to this Settlement Agreement agree that the terms of the Settlement Agreement, including the amount paid by HSBC, were negotiated at arm's-length in good faith by the Parties, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

(b)     This Settlement Agreement is binding and effective as of the date that it has been executed by each of the representatives of the Parties for whom a signature line is provided below.

(c)     All pending motions either filed by HSBC, on HSBC's behalf or in which HSBC has joined are deemed moot as to HSBC.

32

21. **Integrated Agreement.**

This Settlement Agreement (including its exhibits) contains an entire, complete, and integrated statement of each and every term and condition agreed to by and among the Parties and is not subject to any term or condition not provided for herein.  This Settlement Agreement supersedes the Memorandum of Settlement executed on the MOS Date, attached hereto as Exhibit 6.  In the event of a conflict between this Settlement Agreement and the Memorandum of Settlement, this Settlement Agreement controls.  This Settlement Agreement shall not be modified in any respect except by a writing executed by duly authorized representatives of all the Parties hereto.  There shall be no waiver of any term or condition absent an express writing to that effect by the Party to be charged with that waiver (including, for non-natural Persons, by an authorized representative thereof).  No waiver of any term or condition in this Settlement Agreement by any Party shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Settlement Agreement.

22.     **<u>Headings.</u>**

The headings used in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

34

23.         **No Party Is the Drafter.**

The Parties waive the application of any applicable law, regulation, holding or rule of construction providing that ambiguities in an agreement shall be construed against the party drafting such agreement.

24.     **Choice of Law.**

This Settlement Agreement is made in the State of New York, and all terms of this Settlement Agreement and the exhibits hereto shall be governed by and interpreted according to the substantive laws of the State of New York and, as applicable, the federal law of the United States, without regard to their choice of law or conflict of laws principles; provided, however, that any exhibit hereto that expressly states that it is to be governed by the law of another jurisdiction shall be governed by the law so identified in that exhibit.

25.     **Authorization to Enter Settlement Agreement.**

Each of the undersigned representatives of each of the Party/(ies) represents that he/she is fully authorized to enter into, and to execute, this Settlement Agreement on behalf of that Party/(ies).  Each of the Parties agrees that, in return for the agreements herein, he/she/it is receiving good and valuable consideration, the receipt and sufficiency whereof is hereby acknowledged.

26.     **<u>Signature.</u>**

   The Parties may sign this Settlement Agreement in counterparts, and the signature of counterparts shall have the same effect as if the same instrument had been signed.  Facsimile signatures shall be considered as valid signatures as of the Signature Date, although the original signature pages shall thereafter be appended to this Settlement Agreement.  This Settlement Agreement shall not be deemed signed until it has been signed by all of Plaintiffs' Co-Lead Counsel and by an authorized representative of HSBC.

27.     **Resolution of Disputes; Jurisdiction.**

(a)     Nothing herein will be construed as affecting HSBC's obligations to comply with all applicable law with respect to events on or after the MOS Date.

(b)     Any dispute concerning the matters contained in this Settlement Agreement, the Preliminary Approval Order, the Final Judgment and Order of Dismissal, or the Judgment Approving Attorneys' Fees and Costs, and the Disbursement of Monies Designated for Notice Costs in Connection with this Settlement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain personal and subject matter jurisdiction over the implementation and enforcement of this Settlement Agreement, the Final Judgment and Order of Dismissal, and the Judgment Approving Attorneys' Fees and Costs, and the Disbursement of Monies Designated for Notice Costs in Connection with this Settlement.

(c)     The commitments made by the parties on their own behalf or on behalf of the Settlement Class in this Settlement Agreement are enforceable by the Court as a matter of contract.   No injunction will be entered against HSBC as part of judicial approval of the Settlement Agreement.

(1)  In the absence of a judicial finding that HSBC or any Released Party has violated the Settlement Agreement, the Settlement Agreement will not be enforced against HSBC or any Released Party by injunction; and

(2) In the event of a finding that HSBC or any Released Party has violated the Settlement Agreement, the Settlement Agreement may be enforced against HSBC or any Released Party by injunction, including one commanding specific performance of this Settlement Agreement, if warranted and available under applicable law.

39

28.      **No Disparagement.**

(a)      In no event shall Plaintiffs' Co-Lead Counsel or the Representative Plaintiffs make any public statements that disparage the business or reputation of HSBC based on the subject matter of the Litigation, or mischaracterize the Settlement Agreement or any of its terms, provided that this sentence does not apply to statements in any judicial proceeding, including, but not limited to, the Litigation and *Ross, et al. v. American Express Co., et al.*, No. 04-CV-05723 (S.D.N.Y.) (WHP).  Nor shall Plaintiffs' Co-Lead Counsel or the Representative Plaintiffs fail to comply with any applicable confidentiality order or confidentiality agreements or protective orders in communicating with members of the Settlement Class or otherwise.

(b)      In no event shall HSBC or its counsel make any public statements that disparage the business or reputation of any of Plaintiffs' Co-Lead Counsel or the Representative Plaintiffs based on the subject matter of the Litigation, or mischaracterize the Settlement Agreement or any of its terms, provided that this sentence does not apply to statements in any judicial proceeding, including, but not limited to, the Litigation and *Ross, et al. v. American Express Co., et al.*, No. 04-CV-05723 (S.D.N.Y.) (WHP).  Nor shall Bank or America or its counsel fail to comply with any confidentiality order or confidentiality agreements or protective orders in communicating with members of the Settlement Class or otherwise.

40

IN WITNESS WHEREOF, each of the signatories has read and understood this Settlement

Agreement, has executed it, and represents that he or she is authorized to execute this Settlement

Agreement on behalf of the Party or Parties he or she represents, who or which has or have

agreed to be bound by its terms upon the Effective Date and has or have entered into this

Settlement Agreement.

Dated:  February 24, 2010

By: _____      By: _____

    Merrill G. Davidoff, Esq.                  Harry T. Robins, Esq.
    Charles P. Goodwin, Esq.              Sarah Sandok Rabinovici, Esq.
    David A. Langer, Esq.                   Michelle N. Ferreri, Esq.
    BERGER & MONTAGUE, P.C.         MORGAN, LEWIS & BOCKIUS LLP
    1622 Locust Street                    101 Park Avenue
    Philadelphia, PA 19103             New York, NY 10178-0060
    Tel: 215-875-3000                    Tel: 212.309.6000
    Fax: 215-875-4604                   Fax: 212.309.6273

Bonny E. Sweeney, Esq.
COUGHLIN STOIA GELLER
  RUDMAN &  ROBBINS, LLP
665 West Broadway, Suite 1900
San Diego, CA 92101
Tel: 619-231-1058

Kent M. Roger, Esq.
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Tower
San Francisco, CA 94105
Tel: 415.442.1198
Fax: 415.442.1001

*Counsel for Defendants HSBC Finance
Corp. and HSBC Bank, Nevada, N.A.*

Dennis Stewart, Esq.
Bridget Gramme, Esq.
HULETT HARPER STEWART LLP
550 West C Street, Suite 1600
San Diego, CA 92101
Tel: 619-338-1133

Christopher Burke, Esq.
Kristen M. Anderson, Esq.
SCOTT + SCOTT LLP
600 B Street, Suite 1500
San Diego, CA  92101
Tel: 619-233-4565

*Plaintiffs' Co-Lead Counsel*

42

- [Exhibit 1 to the Settlement Agreement – Proposed Preliminary Approval Order](#)

- [Exhibit 2 to the Settlement Agreement – Proposed Final Judgment and order of Dismissal](#)

- [Exhibit 3 to the Settlement Agreement – Notice Plan](#)

- [Exhibit 4 to the Settlement Agreement – Notice](#)

- [Exhibit 5 to the Settlement Agreement – Proposed Judgment Approving Attorneys' Fees and Costs](#)

- [Exhibit 6 to the Settlement Agreement – Memorandum of Settlement](#)

43

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

IN RE                                    :    MDL No. 1409
                                         :
CURRENCY CONVERSION FEE                  :    M 21-95
ANTITRUST LITIGATION                     :
                                         :
                                         :
_____ x
                                         :    Index No.  05 CV 7116 (WHP)
THIS DOCUMENT RELATES TO:                :
                                         :
ROBERT ROSS, et al.,                     :
                                         :
Plaintiffs,                              :
                                         :
-against-                                :
                                         :
BANK OF AMERICA, N.A, (USA) et al.,      :
                                         :
Defendants.                              :
                                         :
_____ x

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION
SETTLEMENT AS TO DEFENDANTS BANK OF AMERICA, N.A. (USA) (N/K/A FIA
CARD SERVICES, N.A.), BANK OF AMERICA, N.A., JPMORGAN CHASE & CO.,
CHASE BANK USA, N.A., CAPITAL ONE BANK (USA), N.A., CAPITAL ONE BANK,
N.A., HSBC FINANCE CORPORATION, AND HSBC BANK NEVADA, N.A.**


        The Court having held a hearing from all interested parties who desire to be heard, and

upon review and consideration of the terms and conditions of the Stipulations and Agreements of

Settlement, including their exhibits, entered into between the Representative Plaintiffs and the

Settlement Class (defined below), by and through the Representative Plaintiffs and Plaintiffs'

Co-Lead Counsel (collectively, "Plaintiffs"), and the "Settling Defendants" (defined below), by

and through their respective authorized signatories (collectively, the "Settlement Agreements");

        Upon consideration of all prior proceedings in this Litigation; and

Upon consideration of the motion for Preliminary Approval of the Settlement Agreements, and the settlement contemplated thereby, and all memoranda, affidavits and other papers and arguments submitted with respect thereto;

NOW, it is hereby ORDERED as follows:

1.      The Settlement Agreements and the definitions of the capitalized words and terms contained therein, filed with the Court on February 24, 2010 (Docket items _____), are incorporated by reference in this Order.

2.      This Court has jurisdiction over the subject matter of this litigation, *Ross, et al. v. Bank of America N.A., et al.*, 05-CV-07116 (WHP) (S.D.N.Y.) (the "Litigation"), and over all parties to the Litigation, including all members of the Class and the Subclass (collectively, the "Settlement Class") certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure in this Court's Order dated October 6, 2009:

> CLASS: All Persons holding during the Period in Suit a Credit Card under a United States Cardholder Agreement with any of the Bank Defendants[1] (including, among other cards, cards originally issued under the MBNA, Bank One, First USA and Providian brands), but not including members of the proposed Subclass, subject to an arbitration provision relating to their cards;[2] and
>
> SUBCLASS: All Persons holding during the Period in Suit a Credit Card under a United States Cardholder Agreement with Discover, which cardholders have not

---

[1] The "Bank Defendants" are: Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., Capital One Bank (USA), N.A., Capital One, N.A., JPMorgan Chase & Co., Chase Bank USA, N.A., Citigroup, Inc., Citibank (South Dakota) N.A., Citibank USA, N.A., Universal Bank, N.A., Universal Financial Corp., Citicorp Diners Club, Inc., DFS Services LLC, Discover Financial Services, Discover Bank, HSBC Finance Corporation, and HSBC Bank, Nevada, N.A.  The "Defendants" are the National Arbitration Forum and the Bank Defendants.  The "Settling Defendants" are Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., JPMorgan Chase & Co., Chase Bank USA, N.A., Capital One Bank (USA), N.A., Capital One Bank, N.A., HSBC Finance Corporation, and HSBC Bank Nevada, N.A.

[2] Use of the term "agreement" in this definition does not reflect any conclusion by the Court that there is any "agreement" between issuers and cardholders either as a matter of fact or law.

previously successfully exercised their right to opt out of the Arbitration of Disputes Provision.[3]

Provided, however, that Defendants (and their corporate parents, subsidiaries and affiliates), American Express (and its corporate parents, subsidiaries and affiliates), Wells Fargo (and its corporate parents, subsidiaries and affiliates), and governmental entities are not members of the Class and Subclass.

3.      The terms of this Court's October 6, 2009, order certifying the Settlement Class are incorporated by referenced into this Order.

4.      The Court hereby preliminarily approves the Settlement Agreements, and the settlement contemplated thereby, as being a fair, reasonable and adequate settlement as to all members of the Settlement Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure, approves the establishment and funding of a fund for the Notice Plan (attached as Exhibit 3 to the Settlement Agreements), and directs the Plaintiffs and Settling Defendants to proceed with said settlement pursuant to the terms and conditions of the Settlement Agreements and exhibits thereto, subject to this Court's authority to determine whether to finally approve said settlement.

5.      The Court hereby finds and concludes that the proposed Notice Plan, including, but not limited to, the proposed publications of notice in two general newspaper publications, the publication of notice in the *ABA* Journal, the releases on PR Newswire, and the dissemination of notice to consumer advocacy organizations (collectively, "Publication Notice"), and the content of the notices to be published (which is attached as Exhibit 4 to the Settlement Agreements), fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.

---

[3]   In referring to Discover's "opt out" provision, the Court does not conclude one way or the other that Discover's "opt out" provision is meaningful, effective or legally operative.

6.     The Settling Defendants have timely filed notifications of this settlement with the appropriate officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4, 7-8 (2005), effective February 18, 2005, codified at 28 U.S.C. §§ 1711-1715. These notifications apprised the appropriate officials that, in connection with the approval of this settlement, the Settling Defendants would seek certification from this Court that their respective notifications complied with any applicable CAFA requirements.  The Court has reviewed such notifications and accompanying materials and finds that the Settling Defendants' notifications comply fully with any applicable requirements of CAFA.

7.     Heffler, Radetich & Saitta, L.L.P. ("HR&S") is hereby appointed Administrator to supervise and administer the Notice Plan (attached as Exhibit 3 to the Settlement Agreements).

8.     Within seven (7) calendar days of preliminary approval of the Settlement Agreements, the Settling Defendants shall advance funds into the Escrow to cover the costs of notice (including administration), in the amounts set forth in Sections 15(b) of the respective Settlement Agreements.  The Court hereby approves the payment of up to $375,000.00 for the payment of notice costs (including administration) and such funds shall be made immediately available to Plaintiffs' Co-Lead Counsel for such purposes only, subject to Plaintiffs' and Plaintiffs' Co-Lead Counsel's compliance with the terms of the Notice Plan.

9.     All further proceedings in the Litigation as to each of the Settling Defendants are ordered stayed until Final Settlement Approval or termination of the respective Settlement Agreement(s), whichever occurs earlier, except (i) for those matters necessary to obtain and/or effectuate Final Settlement Approval, and (ii) as set forth in Sections 5 of the respective Settlement Agreements.

10.     All Settlement Class members, and any Person actually or purportedly acting on behalf of any Settlement Class member(s), are stayed and enjoined from commencing, instituting, continuing, pursuing, maintaining, prosecuting or enforcing any Released Claim (including, without limitation, in any individual, class or putative class, representative or other action or proceeding), directly or indirectly, in any judicial, administrative, arbitral, or other forum, against each of the Settling Defendants until Final Settlement Approval or termination of the respective Settlement Agreement(s), whichever occurs earlier.  This stay and injunction is necessary to protect and effectuate the Settlement Agreements, and the settlement contemplated thereby, this Preliminary Approval Order, and the Court's flexibility and authority to effectuate the Settlement Agreements and to enter final judgment when appropriate, and is ordered in aid of this Court's jurisdiction and to protect its judgments.

11.     The Court hereby schedules a hearing on entry of a Final Judgment and Order of Dismissal as to the Settling Defendants (the "Fairness Hearing") for July 15, 2010, at 11 a.m. in Courtroom 11D at the Daniel Patrick Moynihan United States Courthouse for the Southern District of New York, 500 Pearl Street, New York, New York 10007.  At the Fairness Hearing the Court will consider: whether the settlement on the terms and conditions provided for in the Settlement Agreements is fair, reasonable and adequate and should be approved by the Court; whether the Notice Plan should be approved; and the amount of attorneys' fees and expenses that should be awarded to Plaintiffs' Co-Lead Counsel.

12.     The date and time of the Fairness Hearing shall be set forth in, *inter alia*, the Publication Notice.  The Court reserves the right to adjourn or continue the date of the Fairness Hearing without further notice to members of the Settlement Class, and retains jurisdiction to consider all further applications arising out of or in connection with the Settlement Agreements. At or after the Fairness Hearing, the Court may approve or reject the Settlement Agreement without further notice to members of the Settlement Class.

SO ORDERED this _____ day of _____, 2010

_____
The Honorable William H. Pauley, III
United States District Judge

- 6 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
        :

IN RE                       :   MDL No. 1409
        :

CURRENCY CONVERSION FEE   :   M 21-95
ANTITRUST LITIGATION       :
        :

———————————————————————— x
        :   Index No.  05 CV 7116 (WHP)

THIS DOCUMENT RELATES TO:   :

ROBERT ROSS, et al.,       :

Plaintiffs,           :

-against-           :

BANK OF AMERICA, N.A, (USA), et al.,   :

Defendants.         :

———————————————————————— x

**[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH RESPECT TO DEFENDANTS BANK OF AMERICA, N.A. (USA) (N/K/A FIA CARD SERVICES, N.A.), BANK OF AMERICA, N.A., JPMORGAN CHASE & CO., CHASE BANK USA, N.A., CAPITAL ONE BANK (USA), N.A., CAPITAL ONE BANK, N.A., HSBC FINANCE CORPORATION, AND HSBC BANK NEVADA, N.A.**

      The Court having held a fairness hearing on July 15, 2010, notice of the fairness hearing having duly been given in accordance with this Court's Order dated March __, 2010, the Court having considered all matters submitted to it at the fairness hearing and otherwise, and finding no just reason for delay in entry of this Final Judgment and Order of Dismissal and good cause appearing therefore,

      It is hereby ORDERED, ADJUDGED AND DECREED as follows:

          1.     The Stipulations and Agreements of Settlement, including their exhibits (the "Settlement Agreements") and the definitions of the capitalized words and terms contained

- 1 -

therein, filed with the Court on February 24, 2010 (Docket items _____), are incorporated by reference in this Order.

        2.     This Court has jurisdiction over the subject matter of this litigation, *Ross, et al. v. Bank of America N.A., et al.*, 05-CV-07116 (WHP) (S.D.N.Y.) (the "Litigation"), and over all parties to the Litigation, including all members of the Class and the Subclass (collectively, the "Settlement Class") certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure in this Court's Order dated October 6, 2009:

> <u>CLASS</u>: All Persons holding during the Period in Suit a Credit Card under a United States Cardholder Agreement with any of the Bank Defendants[1] (including, among other cards, cards originally issued under the MBNA, Bank One, First USA and Providian brands), but not including members of the proposed Subclass, subject to an arbitration provision relating to their cards;[2] and

> <u>SUBCLASS</u>: All Persons holding during the Period in Suit a Credit Card under a United States Cardholder Agreement with Discover, which cardholders have not previously successfully exercised their right to opt out of the Arbitration of Disputes Provision.[3]

> Provided, however, that Defendants (and their corporate parents, subsidiaries and affiliates), American Express (and its corporate parents, subsidiaries and affiliates), Wells Fargo (and its corporate parents, subsidiaries and affiliates), and governmental entities are not members of the Class and Subclass.

---

[1] The "Bank Defendants" are: Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., Capital One Bank (USA), N.A., Capital One, N.A., JPMorgan Chase & Co., Chase Bank USA, N.A., Citigroup, Inc., Citibank (South Dakota) N.A., Citibank USA, N.A., Universal Bank, N.A., Universal Financial Corp., Citicorp Diners Club, Inc., DFS Services LLC, Discover Financial Services, Discover Bank, HSBC Finance Corporation, and HSBC Bank, Nevada, N.A. The "Defendants" are the National Arbitration Forum and the Bank Defendants. The "Settling Defendants" are Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.), Bank of America, N.A., JPMorgan Chase & Co., Chase Bank USA, N.A., Capital One Bank (USA), N.A., Capital One Bank, N.A., HSBC Finance Corporation, and HSBC Bank Nevada, N.A.

[2] Use of the term "agreement" in this definition does not reflect any conclusion by the Court that there is any "agreement" between issuers and cardholders either as a matter of fact or law.

[3] In referring to Discover's "opt out" provision, the Court does not conclude one way or the other that Discover's "opt out" provision is meaningful, effective or legally operative.

3.      The terms of this Court's October 6, 2009, order certifying the Settlement Class are incorporated by reference in this Order.

4.      The Court hereby finds that the Settlement Agreements are the product of arm's length settlement negotiations between Plaintiffs and Plaintiffs' Co-Lead Counsel, and the Settling Defendants and their counsel.

5.      This Court hereby finds and concludes that the Notice (attached hereto as Exhibit A) was disseminated to members of the Settlement Class in accordance with the terms set forth in the Notice Plan (attached hereto as Exhibit B) and was in compliance with this Court's Preliminary Approval Order dated March __, 2010.  The Court further finds and concludes that the Notice described in the Notice Plan and provided pursuant to the Court's Preliminary Approval Order, satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, and was provided in a reasonable manner to members of the Settlement Class.

6.      The Settling Defendants have timely filed notifications of this settlement with the appropriate officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), effective February 18, 2005, codified at 28 U.S.C. §§ 1711-1715.  These notifications apprised the appropriate officials that, in connection with the approval of this settlement, the Settling Defendants would seek certification from this Court that their respective notifications complied with any applicable CAFA requirements.  The Court has reviewed such notifications and accompanying materials, and finds that the Settling Defendants' notifications comply fully with any applicable requirements of CAFA.

7.      On consideration of, *inter alia*, the Settling Defendants' agreements with respect to removal of their respective Arbitration Clauses and Class Action Waiver Clauses from

their United States Cardholder Agreements, the bar on seeking to enforce the Arbitration Clause or Class Action Waiver Clause in any of the Settling Defendants' existing or pre-existing United States Cardholder Agreements, and the payment toward notice costs, attorneys' fees, costs and expenses, and other consideration; and the releases provided by the Settlement Class members pursuant to Sections 12 of the respective Settlement Agreements; and the Court's finding that this settlement was the product of arm's length negotiations, as well as of the arguments and submissions made concerning the Settlement Agreements, the Court hereby finally approves the Settlement Agreements, and the settlement contemplated thereby, and finds that the terms constitute, in all respects, a fair, reasonable, and adequate settlement as to all Settlement Class members in accordance with Rule 23 of the Federal Rules of Civil Procedure, and directs its consummation pursuant to its terms and conditions.

8.      This Court hereby dismisses, on the merits and with prejudice, without costs to any party (except as provided for in the Settlement Agreements), the First Amended Class Action Complaint in favor of the Settling Defendants and against all Settlement Class members.

9.      On final approval of the Settlement Agreements (including, without limitation, the exhaustion of any judicial review, or requests for judicial review, from this Final Judgment and Order of Dismissal), each of the Settlement Class members unconditionally, fully and finally releases and forever discharges the Settling Defendants from the Released Claims. Each of the Representative Plaintiffs covenants and agrees that it shall not take any step whatsoever to commence, institute, continue, pursue, maintain, prosecute or enforce any Released Claim(s), on behalf of itself or any other person, against any of the Settling Defendants.

10.     The Settlement Agreements (including, without limitation, their exhibits), and any and all negotiations, documents and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation or principle of common law or equity, of any liability or wrongdoing, by any of the Settling Defendants, or of the truth of any of Plaintiffs' allegations in the Litigation, and evidence relating to the Settlement Agreements shall not be discoverable or used, directly or indirectly, in any way, whether in the Litigation or in any other action or proceeding, except by the Parties for purposes of implementing or enforcing the terms and conditions of the Settlement Agreements, the Preliminary Approval Order and/or this Order.

11.     If, for any reason, any of the Settlement Agreements terminates before final approval of the Settlement Agreements (including, without limitation, the exhaustion of any judicial review, or requests for judicial review from this Final Judgment and Order of Dismissal), then the parties to such terminated Settlement Agreement(s) shall return to the *status quo ante* in the Litigation, without prejudice to the right of any Plaintiffs, the Settlement Class members or the Settling Defendants to assert any right or position that he, she or it could have asserted if the Settlement Agreement(s) had never been reached or proposed to the Court.

12.     In the event that any of the provisions of the Settlement Agreements or this Final Judgment and Order of Dismissal is asserted by any of the Settling Defendants as a defense in whole or in part to any claim or cause of action in any other suit, action, or other proceeding brought by a Settlement Class member or any person actually or purportedly acting on behalf of any Settlement Class member(s), that suit, action or other proceeding may be stayed and enjoined upon application to this Court.  Solely for purposes of such suit, action, or other proceeding, to the fullest extent they may effectively do so under applicable law, the Plaintiffs,

the Settlement Class members, and the Settling Defendants irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court, or that the Court is, in any way, an improper venue or an inconvenient forum. This Paragraph 12 is necessary to protect and effectuate the Settlement Agreements, this Final Judgment and Order of Dismissal, and this Court's flexibility and authority to effectuate the Settlement Agreements, and is ordered in aid of this Court's jurisdiction and to protect its judgments.

13.     Except as otherwise specifically provided by the Settlement Agreements and ordered by the Court, the parties shall each be responsible for his, her, or its own costs, attorneys' fees, and expenses.

14.     Without in any way affecting this Final Judgment and Order of Dismissal, the Court hereby reserves exclusive personal and subject matter jurisdiction over the implementation and enforcement of the Settlement Agreements and this Final Judgment and Order of Dismissal, including, but not limited to, any disputes relating to or arising out of the Released Claims.

15.     All pending motions in the Litigation filed by the Settling Defendants, on the Settling Defendants' behalf or in which the Settling Defendants have joined are deemed moot as to the Settling Defendants.

16.     Finding that there is no just reason for delay, this Order shall constitute a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  The Clerk of the Court is directed to enter this order on the docket forthwith.

SO ORDERED this ____ day of _____, 2010

_____
The Honorable William H. Pauley, III
United States District Judge

Notice of Proposed Settlement and Application for Attorneys' Fees

This notice is authorized by the U.S. District Court for the Southern District of New York. The court will hold a hearing, in which you may participate, before this settlement is finally approved.

**To: Holders of consumer or small business credit cards from Bank of America, Capital One, Chase, Citibank, Discover and HSBC.**

If you (individuals, small businesses and agencies) hold a consumer or small business credit card issued by Bank of America, Capital One, Chase, Citibank, Discover or HSBC, your rights may be affected by the partial settlement of this class action lawsuit.

**What is this lawsuit about?**

This lawsuit (called *Ross, et al. v. Bank of America, N.A., (USA)*, No. 05-cv-7116 (S.D.N.Y.)) claims that the settling defendants Bank of America, Capital One, Chase and HSBC and the non-settling defendants Discover, Citibank and National Arbitration Forum violated federal law by conspiring, with each other and certain non-defendants, to require that their cardholders (a) take all legal disputes to arbitration rather than court and (b) give up any right to participate in class actions against these credit card companies. All defendants deny that they conspired with each other and say that they have done nothing unlawful or improper.

Arbitration is a type of dispute resolution, where the parties agree that private arbitrators, rather than judges in court, will decide their disputes. Class actions are a type of court proceeding where representative individuals, who must be approved by the court, bring a lawsuit on behalf of a class of similarly situated people or businesses.

This lawsuit alleges that defendants colluded with each other to adopt and invoke arbitration clauses to prevent consumers from enforcing their rights under state and federal law, both individually and in class actions. This lawsuit seeks to change the defendants' conduct with respect to arbitration clauses and class action bans. This lawsuit never sought money damages for cardholders. This lawsuit also seeks plaintiffs' attorneys' fees and reimbursement of their litigation expenses.

**What is the proposed settlement?**

The settlement must be approved by the court. It requires that the settling defendants cease enforcing arbitration clauses and class action bans against their consumer and small business credit card cardholders and that they remove arbitration clauses and class action bans from the terms they require of their cardholders for a period of 3-1/2 years. The settlement requires the settling defendants, subject to court review, to pay $2.35 million to defray attorneys' fees and litigation expenses, including the cost of this notice.

If approved, the settlement will bind you. It releases the settling defendants from all liability stemming from the adoption or inclusion of the arbitration clauses and class action bans in the

terms they require of their consumer and small business credit card cardholders. The settling defendants are *NOT* being released from any claim for money damages that may allegedly arise from the *invocation or enforcement* of their arbitration clauses and class action bans.

**What will not be settled?**

The case will remain pending against Citibank, Discover and the National Arbitration Forum.

**Do I have to go to court?**

No, but you may. You may also hire an attorney, at your own cost. The court hearing to decide whether to approve the settlement is on July 15, 2010 at 11:00 AM at the U.S. District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007-1581. If you plan to go, check with the website at **[WEB ADDRESS]** or with class counsel to confirm the time and date.

**Is there any payment to cardholders?**

No, there is no payment to cardholders in this settlement. This lawsuit seeks only to change the defendants' alleged conduct on arbitration clauses and class action bans. No money damages were or are sought in this case.

**Can I exclude myself from this settlement?**

No, you cannot exclude yourself from the settlement because the relief involves the settling defendants changing their conduct towards you and all other class members.

**What are my options?**

If you agree with the settlement, you do not need to do anything. If you disagree with the settlement or the payment of attorneys' fees, you may object to either. You must file your written objection and proof of class membership with the court. You do not have to go to court or hire an attorney, but you can at your own expense. **The deadline for objecting is June 11, 2010.** The plaintiffs' papers supporting the settlement will be filed on May 28, 2010 and will be available at **[WEB ADDRESS]** within 24 hours thereafter.

**What are the Attorneys' Fees for Plaintiffs' Counsel?**

Bank of America, Capital One, Chase and HSBC have agreed to pay a total of $2.35 million in attorneys' fees and litigation expenses, including the cost of publishing and distributing this notice. Specifically, Bank of America will pay $600,000; Capital One, $650,000; Chase, $700,000; and HSBC, $400,000. Neither you nor any class member is responsible for paying these fees and expenses, which will be paid by defendants. Plaintiffs' counsel will ask the court to approve reimbursement to them of litigation expenses and payment of the remainder as attorneys' fees. The relief to you and the class is not being reduced as a result of these payments.

Plaintiffs' attorneys' fees at their regular hourly rates substantially exceed any reimbursement that may occur as a result of these settlements.

**For more information…**

This notice is only a summary. For answers to common questions and more information, including complete copies of the settlement agreements and filings in support of the settlement, please visit **[WEB ADDRESS]**. You may also call 1-800-XXX-XXXX.

**Telephone number: 1-800-XXX-XXXX**

More information at: **[WEB ADDRESS]**

**NOTICE PLAN**

The Parties,[1] after substantial discovery and investigation of the facts and careful consideration of the applicable law, and after arm's length negotiations, have agreed to this Notice Plan in connection with these Settlement Agreements.

**1.** __Notice.__

(a) The Notice of these Settlement Agreements shall be published for the first time within thirty (30) days after entry of an order granting preliminary approval of the Settlement Agreements, unless otherwise ordered by the Court.

(b) The Notice will be in the form attached as Exhibit 4 to the Settlement Agreements and it will be disseminated in the following general publications:

(i) *USA Today*, 1/6 page, 2 times (2,254,787 circulation per run; estimated cost is $42,385).

(ii) *Wall Street Journal*, 1/6 page, 2 times (2,070,498 circulation per run; estimated cost is $56,610).

(iii) Provided there is sufficient time available to meet the required publication deadlines at the time that preliminary approval is granted, the *ABA Journal*, 1/2 page, 1 time (384,799 circulation; estimated cost is $13,030).

(c) The Notice shall also be disseminated via three releases on PR Newswire (estimated cost is $1,825 per release).[2]

(d) The total estimated cost for disseminating the Notice in the *USA Today*, *Wall Street Journal*, and *ABA Journal*, plus three PR Newswire releases is $117,500.

---

[1] The capitalized words and terms used in this Notice Plan shall have the meaning ascribed to them in the Settlement Agreements.

[2] The second through third releases in PR Newswire are subject to PR Newswire's approval.

2. **Internet / Website Notice.**

(a)     The Notice shall also be maintained at www.ccfsettlement.com (or
"Settlement Website"), which is the website used to assist with the administration of the
settlement of the related MDL 1409 matter, *In re Currency Conversion Fee Antitrust
Litig. ("Currency Conversion")*, MDL No. 1409, Master File No. M21-95 (S.D.N.Y.)
(WHP).  Use of this pre-existing website will both reduce expenses and broaden the
dissemination of the Notice to members of the Settlement Class as many of these
individuals will also be accessing the Settlement Website as claimants to the *Currency
Conversion* settlement.

(b)     A subdomain, with a descriptive title (*e.g.*,
"arbitrationsettlement.ccfsettlement.com"), will be created as part of the Settlement
Website which will be accessible from the site's "welcome" page.[3]  The subdomain will,
*inter alia*: (i) permit Persons to read and/or download the Notice, the Settlement
Agreements, the complaints, certain Court orders and decisions, and other pertinent
documents or information agreed to in advance by the Parties; (ii) facilitate the answering
of frequently asked questions ("FAQs") and/or to provide any updates agreed upon by the
Parties; and (iii) provide contact information for class member inquiries and
correspondence, which will include a post office box[4] for written correspondence and the

---

[3] The Settlement Website is managed by Heffler, Radetich & Saitta, L.L.P. ("HR&S"),
which the Court appointed as the Claims Administrator for the *Currency Conversion*
settlement, pursuant to an Order dated November 8, 2006.  Because HR&S possesses
expertise concerning the *Currency Conversion* settlement and it manages the Settlement
Website (as well as the toll-free phone system), Plaintiffs' Co-Lead Counsel respectfully
recommend that HR&S be appointed the Administrator for this Notice program.

[4] The cost to maintain a post office box is currently $580 every six months.

3

toll-free 800 telephone service described in Section 3 below. The subdomain on the website shall be available in Spanish and offer Spanish-language versions of the Notice and answers to FAQs.

(c)     The total estimated cost for establishing the Settlement Website subdomain is $3,000 to $5,000, and the cost to maintain the subdomain will be approximately $500 to $750 per month.

**3.      Telephone Support.**

A toll-free 800 telephone system will be maintained to allow members of the Settlement Class to access a toll-free number to permit callers to speak with a person who is knowledgeable about the litigation and the settlement, and who can respond to any inquiries.

**4.      Dissemination of the Notice to Consumer Advocacy Organizations.**

The Notice, as well as a copy of the Settlement Agreements, the First Amended Class Action Complaint and the decision of the Court of Appeals for the Second Circuit in this matter, will be mailed directly, via first class mail, to the following eight leading consumer advocacy groups who have an established track record of engagement with consumers' rights issues: (i) Consumer Action; (ii) Consumer Federation of America; (iii) National Association of Consumer Advocates; (iv) National Consumer Law Center; (v) National Consumers League; (vi) Public Citizen; (vii) Public Justice (formerly Trial Lawyers for Public Justice); and (viii) U.S. Public Interest Research Groups ("U.S. PIRG.").

Notice of Proposed Settlement and Application for Attorneys' Fees

This notice is authorized by the U.S. District Court for the Southern District of New York. The court will hold a hearing, in which you may participate, before this settlement is finally approved.

**To: Holders of consumer or small business credit cards from Bank of America, Capital One, Chase, Citibank, Discover and HSBC.**

If you (individuals, small businesses and agencies) hold a consumer or small business credit card issued by Bank of America, Capital One, Chase, Citibank, Discover or HSBC, your rights may be affected by the partial settlement of this class action lawsuit.

**What is this lawsuit about?**

This lawsuit (called *Ross, et al. v. Bank of America, N.A., (USA)*, No. 05-cv-7116 (S.D.N.Y.)) claims that the settling defendants Bank of America, Capital One, Chase and HSBC and the non-settling defendants Discover, Citibank and National Arbitration Forum violated federal law by conspiring, with each other and certain non-defendants, to require that their cardholders (a) take all legal disputes to arbitration rather than court and (b) give up any right to participate in class actions against these credit card companies. All defendants deny that they conspired with each other and say that they have done nothing unlawful or improper.

Arbitration is a type of dispute resolution, where the parties agree that private arbitrators, rather than judges in court, will decide their disputes. Class actions are a type of court proceeding where representative individuals, who must be approved by the court, bring a lawsuit on behalf of a class of similarly situated people or businesses.

This lawsuit alleges that defendants colluded with each other to adopt and invoke arbitration clauses to prevent consumers from enforcing their rights under state and federal law, both individually and in class actions. This lawsuit seeks to change the defendants' conduct with respect to arbitration clauses and class action bans. This lawsuit never sought money damages for cardholders. This lawsuit also seeks plaintiffs' attorneys' fees and reimbursement of their litigation expenses.

**What is the proposed settlement?**

The settlement must be approved by the court. It requires that the settling defendants cease enforcing arbitration clauses and class action bans against their consumer and small business credit card cardholders and that they remove arbitration clauses and class action bans from the terms they require of their cardholders for a period of 3-1/2 years. The settlement requires the settling defendants, subject to court review, to pay $2.35 million to defray attorneys' fees and litigation expenses, including the cost of this notice.

If approved, the settlement will bind you. It releases the settling defendants from all liability stemming from the adoption or inclusion of the arbitration clauses and class action bans in the

terms they require of their consumer and small business credit card cardholders. The settling defendants are *NOT* being released from any claim for money damages that may allegedly arise from the *invocation or enforcement* of their arbitration clauses and class action bans.

**What will not be settled?**

The case will remain pending against Citibank, Discover and the National Arbitration Forum.

**Do I have to go to court?**

No, but you may. You may also hire an attorney, at your own cost. The court hearing to decide whether to approve the settlement is on July 15, 2010 at 11:00 AM at the U.S. District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007-1581. If you plan to go, check with the website at **[WEB ADDRESS]** or with class counsel to confirm the time and date.

**Is there any payment to cardholders?**

No, there is no payment to cardholders in this settlement. This lawsuit seeks only to change the defendants' alleged conduct on arbitration clauses and class action bans. No money damages were or are sought in this case.

**Can I exclude myself from this settlement?**

No, you cannot exclude yourself from the settlement because the relief involves the settling defendants changing their conduct towards you and all other class members.

**What are my options?**

If you agree with the settlement, you do not need to do anything. If you disagree with the settlement or the payment of attorneys' fees, you may object to either. You must file your written objection and proof of class membership with the court. You do not have to go to court or hire an attorney, but you can at your own expense. **The deadline for objecting is June 11, 2010.** The plaintiffs' papers supporting the settlement will be filed on May 28, 2010 and will be available at **[WEB ADDRESS]** within 24 hours thereafter.

**What are the Attorneys' Fees for Plaintiffs' Counsel?**

Bank of America, Capital One, Chase and HSBC have agreed to pay a total of $2.35 million in attorneys' fees and litigation expenses, including the cost of publishing and distributing this notice. Specifically, Bank of America will pay $600,000; Capital One, $650,000; Chase, $700,000; and HSBC, $400,000. Neither you nor any class member is responsible for paying these fees and expenses, which will be paid by defendants. Plaintiffs' counsel will ask the court to approve reimbursement to them of litigation expenses and payment of the remainder as attorneys' fees. The relief to you and the class is not being reduced as a result of these payments.

Plaintiffs' attorneys' fees at their regular hourly rates substantially exceed any reimbursement that may occur as a result of these settlements.

**For more information…**

This notice is only a summary. For answers to common questions and more information, including complete copies of the settlement agreements and filings in support of the settlement, please visit **[WEB ADDRESS]**. You may also call 1-800-XXX-XXXX.

**Telephone number: 1-800-XXX-XXXX**

More information at: **[WEB ADDRESS]**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
:
IN RE                                              :        MDL No. 1409
:
CURRENCY CONVERSION FEE            :        M 21-95
ANTITRUST LITIGATION                       :
:
———————————————————— x
:
THIS DOCUMENT RELATES TO:            :        Index No.  05 CV 7116 (WHP)
:
ROBERT ROSS, et al.,                           :
:
Plaintiffs,                                              :
:
-against-                                               :
:
BANK OF AMERICA, N.A, (USA) et al.,  :
:
Defendants.                                            :
:
———————————————————— x

**[PROPOSED] JUDGMENT APPROVING ATTORNEYS' FEES AND COSTS,
AND THE DISBURSEMENT OF MONIES DESIGNATED FOR NOTICE COSTS
IN CONNECTION WITH THE SETTLEMENT AS TO DEFENDANTS BANK OF
AMERICA, N.A. (USA) (N/K/A FIA CARD SERVICES, N.A.), BANK OF AMERICA,
N.A., JPMORGAN CHASE & CO., CHASE BANK USA, N.A., CAPITAL ONE BANK
(USA), N.A., CAPITAL ONE BANK, N.A., HSBC FINANCE CORPORATION, AND
HSBC BANK NEVADA, N.A.**

This Court having held a fairness hearing on July 15, 2010, notice of the fairness hearing

having duly been given in accordance with this Court's Order dated _____, 2010, the

Court having considered all matters submitted to it at the fairness hearing and otherwise, and

finding no just reason for delay in entry of this Judgment and good cause appearing therefore,

hereby ORDERS that:

1.      The definitions of the capitalized terms in the respective Settlement Agreements (defined below), filed with the Court on February 24, 2010 (Docket items _____), are incorporated by reference in this Judgment.

2.      Subject to the Stipulations and Agreements of Settlement (the "Settlement Agreements") with Bank of America, N.A. (USA) (n/k/a FIA Card Services, N.A.) and Bank of America, N.A. (collectively, "Bank of America"), JPMorgan Chase & Co. and Chase Bank USA, N.A. (collectively, "Chase"), Capital One Bank (USA), N.A., and Capital One Bank, N.A. (collectively, "Capital One"), and HSBC Finance Corporation and HSBC Bank Nevada, N.A. (collectively HSBC) (collectively, the "Settling Defendants"), each of the Settling Defendants agreed to pay the following sums in attorneys' fees, expenses, and costs (collectively, "Attorneys' Fees"):

| Settling Defendant | Amount of Attorneys' Fees |
|---|---|
| Bank of America | $600,000.00 |
| Chase | $700,000.00 |
| Capital One | $650,000.00 |
| HSBC | $400,000.00 |
| **TOTAL** | **$2,350,000.00** |

Each of the Settling Defendants further agreed to advance certain sums into an escrow account (the "Escrow") to cover the payment of notice costs (including administration), which shall be credited against the above amounts that each Settling Defendant agreed to pay in Attorneys' Fees.

3.      Pursuant to the Settlement Agreements, the Settling Defendants advanced a combined total of $375,000.00 into the Escrow to cover notice costs.  Of the $375,000.00 advanced by the Settling Defendants to cover notice costs, $_____ was used by Plaintiffs' Co-Lead Counsel for the cost of notice and settlement administration.  Thus, the sum of $_____ currently remains in the Escrow.

4.      The Court hereby approves the payment to Plaintiffs' counsel of reasonable and appropriate attorneys' fees, expenses and costs, in the amount of $_____.  Upon Final Settlement Approval, Plaintiffs' Co-Lead Counsel Berger & Montague, P.C. is authorized to withdraw the remaining monies from the Escrow, including the interest earned thereon.  Within ten (10) business days of Final Settlement Approval, each of the Settling Defendants shall pay to Plaintiffs' Co-Lead Counsel the agreed upon Attorneys' Fees amounts set forth in Sections 15(c) of the respective Settlement Agreements.

5.      Plaintiffs' Co-Lead Counsel Berger & Montague, P.C. shall allocate the monies paid for attorneys' fees and litigation expenses among all Plaintiffs' counsel based on Berger & Montague's reasonable assessment of the relative contributions of such counsel to the prosecution of the case on behalf of the Settlement Class.

6.      Without affecting the finality of this Judgment in any respect, this Court reserves jurisdiction over any matters related to or ancillary to this Judgment.

7.      Finding that there is no just reason for delay, this Judgment shall constitute a final judgment pursuant to Federal Rule of Civil Procedure Rule 54(b).  The Clerk of the Court is directed to enter this Judgment on the docket forthwith.


Dated: _____
        New York, New York

                                        SO ORDERED:


                                        _____
                                        The Honorable William H. Pauley, III
                                        United States District Judge

*Copies to:*
All Counsel of Record

## MEMORANDUM OF SETTLEMENT WITH HSBC

WHEREAS, HSBC Finance Corporation and HSBC Bank Nevada, N.A. (collectively, "HSBC"), on the one hand, and Robert Ross, Andrea Kune, Woodrow Clark, Herve Senequier, Byron Balbach, Jr., Matthew Grabell, Richard Mandell, and Paul Impellezzeri (together, the "Plaintiffs"), on the other hand, are parties to *Ross, et al. v. Bank of America, N.A. (USA), et al.*, S.D.N.Y. Case No. 05 CV 7116 (WHP) (THK) (the "Litigation");

WHEREAS, the United States District Court for the Southern District of New York (the "Court") certified a Class and Subclass in the Litigation pursuant to an Order dated October 6, 2009;

WHEREAS, HSBC denies all liability with respect to the claims alleged by the Plaintiffs in the Litigation; and

WHEREAS, HSBC and Plaintiffs wish to enter into a compromise and settlement to avoid the uncertainty and expense of litigation and to achieve a fair and reasonable resolution of the Litigation with respect to HSBC;

NOW THEREFORE, Plaintiffs, on behalf of themselves and the Class and Subclass (the "Settlement Class"), enter into the following Memorandum of Settlement ("Settlement") with HSBC:

1.      HSBC will remove all terms and conditions requiring the arbitration of disputes (an "Arbitration Clause") and waiving the right to bring class action lawsuits (a "Class Action Waiver Clause") from its general purpose consumer credit card agreements by mailing new agreements or change in terms notices ("Mailings") to all of its general purpose consumer credit card holders. Such Mailings will be substantially completed within sixty (60) days following March 31, 2010. HSBC will not restore or otherwise insert into its consumer credit card agreements either an Arbitration Clause or a Class Action Waiver Clause within three and one half (3.5) years following March 31, 2010; *provided*, however, that if HSBC fails to substantially complete the required Mailings within 60 days of March 31, 2010, the Settlement will remain effective, but the three and one half year period shall be extended by the same amount of time by which HSBC is late in substantially completing the Mailings.

2.      (a) HSBC will not seek to enforce an Arbitration Clause or Class Action Waiver Clause against a member of the Settlement Class based on currently existing or pre-existing consumer credit card agreements except that HSBC reserves the right to seek enforcement of the Arbitration Clauses and Class Action Waiver Clauses:

(i)      as against a member of the Settlement Class who, after being offered the choice in writing by HSBC, opts in writing for a general purpose credit card related arbitration to continue in arbitration rather than being refiled in court;  and

(ii)      as provided in paragraph 4(d) below.

(b)     For the avoidance of doubt, to the extent that HSBC has, prior to the execution hereof, obtained any arbitration awards, judgments, or court rulings based in whole or in part on an Arbitration Clause or Class Action Waiver Clause in any matter, HSBC is not precluded from seeking to enforce or uphold such awards, judgments or court rulings.

(c)     With respect to any HSBC cardholder agreement, account or obligation that HSBC transfers or assigns to a third party after March 31, 2010, HSBC will require that said third party will abide by the provisions of this paragraph 2.

3.     HSBC will not contract, combine, or conspire with any other credit card issuer regarding the re-imposition or re-adoption of an Arbitration Clause or Class Action Waiver Clause. Nothing herein will be construed or deemed to be an admission or evidence of any violation of any statute, law or legal principle, or of any liability or wrongdoing, by HSBC or anyone acting on HSBC's behalf.

4.     (a) All members of the Settlement Class release and forever discharge HSBC, together with its officers, directors, employees, agents, attorneys, predecessors, successors, and affiliates, including but not limited to HSBC Bank USA, N.A., from any and all Released Claims, except for the Carved Out Claims as described in paragraph 4(c) below.

(b) "Released Claims" means any and all actual or potential claims, actions, causes of action, liabilities, damages (whether actual, nominal, punitive, exemplary, or otherwise), injunctive relief, costs, fees, attorneys' fees, or penalties of any kind (i) which arise in whole or in part out of the adoption or inclusion of an arbitration clause or class action waiver in a consumer credit card agreement, or (ii) which are, have been, or could have been asserted within the scope of the facts asserted in the Litigation. Notwithstanding the foregoing, "Released Claims" do not include claims arising from acts or omissions occurring on or after (x) the date on which class notice is published, or (y) the date on which HSBC's cardholder agreements are amended pursuant to paragraph 1 of this Settlement, whichever occurs first.

(c) "Carved Out Claims" are claims for monetary relief arising from any alleged damage or injury allegedly experienced by a member of the Settlement Class as a result of HSBC's invocation or enforcement of an Arbitration Clause or Class Action Waiver Clause against that Settlement Class member. Carved Out Claims include but are not limited to any and all claims relating to (i) the use of NAF arbitration proceedings to seek the collection of actual or alleged cardholder debts, and (ii) any act or omission undertaken in anticipation of, in connection with, incident to, referencing the fact or possibility of, or to enforce the results of such NAF proceedings. Notwithstanding the foregoing, Carved Out Claims do not include (x) the claims of individuals who did not experience the invocation or enforcement of an Arbitration Clause or Class Action Waiver Clause as a named party in litigation or arbitration (e.g., a claim that an individual experienced the enforcement of an Arbitration Clause solely as an absent class member is not a Carved Out Claim), and (y) claims of the named Plaintiffs.

(d) HSBC reserves any and all rights, defenses and counterclaims that it may have with respect to any Carved Out Claims asserted against HSBC or its representatives or affiliates, including, without limitation, the right to seek to compel the arbitration of Carved Out Claims, the right to assert a Class Action Waiver Clause with respect to Carved Out Claims, and the right

to contend that Carved Out Claims are barred or precluded by prior arbitration awards, rulings or judgments, including awards, rulings and judgments predicated on an Arbitration Clause or Class Action Waiver Clause. Subject to the limitations stated in paragraph 2(c) above, the foregoing reservation of rights includes, without limitation, the right to assert and seek enforcement of Arbitration Clauses, Class Action Waiver Clauses, arbitration awards, judgments, and court rulings with respect to any and all claims relating to (i) the use of NAF arbitration proceedings to seek the collection of actual or alleged cardholder debts, and (ii) any act or omission undertaken in anticipation of, in connection with, incident to, referencing the fact or possibility of, or to enforce the results of such NAF proceedings.

     5.    This Settlement shall not supersede or reduce any protections conferred on cardholders by legislation or regulation with respect to arbitration clauses or class action waivers.

     6.    Subject to court approval, and upon final approval of the Settlement, HSBC will pay Class Counsel $400,000 in attorneys' fees, costs, and expenses. Other than as expressly provided in this Settlement, Plaintiffs and HSBC (as amongst each other) will bear their own fees, costs and expenses in the Litigation.

     7.    HSBC, Plaintiffs, and Class Counsel (collectively, the "Parties") agree that publication notice is sufficient to satisfy the requirements of due process and Fed. R. Civ. P. 23. HSBC shall advance and bear the cost of such notice in the first instance, up to a maximum of seventy-five thousand dollars ($75,000), but all sums expended on notice by HSBC shall be credited against the payment of attorneys' fees, costs, and expenses due to Class Counsel under paragraph 6 of this Settlement. If, as a condition of approval of this Settlement, the Court or a reviewing court requires individual notice of the Settlement, or requires publication notice costing more than seventy-five thousand dollars ($75,000), then HSBC, Class Counsel and Plaintiffs each will have the option to void this Settlement *ab initio* within twenty one (21) days of such ruling. In the event that the Settlement is not approved or does not become effective following the publication of notice to the Class, HSBC will not seek to recover the costs of such notice from Plaintiffs or Class Counsel.

     8.    This Settlement and all of the commitments and obligations it imposes on the Parties are contingent on preliminary and final approval of the Settlement by the Court and any reviewing courts in a manner satisfactory to HSBC and Plaintiffs. Such final court approval shall include the dismissal with prejudice of the Litigation as against HSBC. If satisfactory approval of the Settlement does not occur, or if the Settlement is voided under paragraph 7 hereof, then the Settlement shall be void *ab initio*, shall have no force and effect, and shall impose no obligations on the Parties, except that the Settlement and all settlement discussions between the Parties will remain inadmissible, undiscoverable, and strictly confidential to the maximum extent permitted by law.

     9.    The commitments made by the Parties and on behalf of the Settlement Class in this Settlement are enforceable by the Court as a matter of contract. In the absence of a judicial finding that HSBC has violated the Settlement, the Settlement will not be enforced against HSBC by injunction, and no injunction will be entered against HSBC as part of judicial approval of the Settlement. The Court will retain jurisdiction for purposes of enforcement of this Settlement.

10.     HSBC and Plaintiffs will cooperate with each other in good faith regarding (a) discovery requests from Plaintiffs relating to the Litigation and (b) limiting the burden that such discovery requests impose on HSBC. Such cooperation shall extend to cooperation regarding the resolution of privilege disputes regarding HSBC documents, but shall not require HSBC to waive valid claims of privilege or work product. With respect to making witnesses available for deposition or trial in connection with the Litigation, HSBC will make available, to the best of its ability, up to eight witnesses currently or formerly employed by HSBC or a HSBC predecessor institution (a "HSBC-Affiliated Witness"). A HSBC-Affiliated Witness who appears for deposition will not also be required to appear at trial unless Plaintiffs are unable to enter into evidence the relevant portions of the deposition transcript relating to that witness. Plaintiffs will not seek the deposition or appearance at trial of more than the eight HSBC-Affiliated Witnesses contemplated in this paragraph.

11.     The Parties waive the application of any applicable law, regulation, holding or rule of construction providing that ambiguities in an agreement shall be construed against the party drafting such agreement.

12.     Any consumer general purpose credit card portfolios that HSBC acquires after the date of execution of this Settlement will be conformed to the terms of this Settlement within a reasonable period of time.

13.     The Parties will cooperate with respect to any public statements regarding this Settlement.

14.     Each of the undersigned representatives of the Parties represents that he/she is fully authorized to enter into, and to execute, this Settlement on behalf of that Party or Parties.

15.     This Settlement is binding and effective as of the date that it has been executed by each of the representatives of the Parties for whom a signature line is provided below, even if this Settlement is never superseded by a more detailed settlement agreement. Plaintiffs, Defendants, and Class Counsel will, however, use their best efforts to agree upon and execute (a) a more detailed superseding settlement agreement within sixty (60) days after the date this Settlement is signed, and (b) such other documentation as may be required in order to effectuate this Settlement, and to thereafter obtain court approval of the Settlement.

16.     Except for (a) HSBC's obligations under paragraph 1 of this Settlement, the duration of which are addressed in paragraph 1, (b) HSBC's obligations under paragraphs 6 and 7, which are intended to be permanent, and (c) HSBC's obligations under paragraph 10, which expire at the conclusion of the Litigation, HSBC's obligations under this Settlement will expire five years after the date of execution of this Settlement.

17. This Settlement may be signed in any number of counterparts, each of which shall be regarded as an original and all of which shall constitute but one and the same instrument.

For HSBC Finance Corporation and
HSBC Bank Nevada, N.A.

_____          Dated _____

Harry T. Robins
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178

For Plaintiffs, the Class and Subclass:

Dated December 30, 2009

Merrill G. Davidoff
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103

17. This Settlement may be signed in any number of counterparts, each of which shall be regarded as an original and all of which shall constitute but one and the same instrument.

For HSBC Finance Corporation and
HSBC Bank Nevada, N.A.

Dated __12/3 4/09__

Harry T. Robins
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178

For Plaintiffs, the Class and Subclass:

Dated __December 30, 2009__

Merrill G. Davidoff
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103